UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **G. SIMPSON** | § | |
| *Plaintiff* | § | |
| | § | |
| | § | |
| **V.** | § | **CASE NO.** __4:24-cv-2084____ |
| | § | |
| | § | |
| | § | Jury Trial Demanded |
| **NAVIENT SOLUTIONS, LLC** | § | |
| *Defendant* | § | |
| | § | |

## PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT, AND REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF

PLAINTIFF, G. SIMPSON ("Plaintiff"), by and through Plaintiff's undersigned counsel, in the above-styled matter and files this Plaintiff's Original Complaint complaining of Defendant, Navient Solutions, LLC f/k/a Sallie Mae (hereinafter referred to as "Defendant" and/or "Navient" and/or "SLM"), and for cause of action respectfully shows the Court the following:

## I.      INTRODUCTION

1.      Navient Solutions, LLC f/k/a Sallie Mae was the lone student loan servicer when Plaintiff obtained her initial student loans in 2003. Being in repayment since 2007, Plaintiff diligently attempted to pay down her student loans which are still serviced by Navient.

2.      Despite her overpayments, Navient failed to properly service her loans, failed to properly apply her payments, failed to properly calculate the terms of her loans, and unilaterally and fraudulently modified the terms of the loans, ultimately extending her loans up to 54 years— *twenty-nine (29) years past the time period permitted by statute*.

3.      Defendant misreported Plaintiff's loans on her credit reports causing her financial

1

harm. Despite a year of trying to resolve the issues with Navient and the credit bureaus without success, Plaintiff had no choice but to bring this lawsuit.

## II.     THE PARTIES

4.     Plaintiff, G. Simpson is a natural person who entered into the contract that made the basis of this suit in Harris County, Texas, and is a "consumer" as defined by the Fair Credit Reporting Act, 12 CFR § 1022.3(f).

5.     Defendant Navient Solutions, LLC f/k/a Navient Corporation/ Navient Solutions, Inc., f/k/a Sallie Mae, Inc., and "Sallie Mae" (hereinafter "Navient" and/or "SLM") is a foreign corporation doing business in Texas, with its registered agent for service of process located at CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## ACTS OF CORPORATE/LLC ENTITIES

6.     Wherever in the Complaint, a corporate and/or LLC Defendant is referred to as doing any act or thing or failing to do any act or thing, such reference includes the corporate or business entity itself as well as the officers, owner, partners, managers, members, agents, servants, directors, representatives, and/or employees of said, Defendant.

## JURISDICTION AND VENUE

7.     Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case of the Fair Credit Reporting Act and the Federal Family Education Loan Program. At the time the contract made the basis of this suit was entered into was in Harris County, Texas and was performable in Harris County, Texas.

8.     Additionally, complete diversity exists between the Parties and the matter in controversy is more than $75,000.

9.     Plaintiff seeks pendent and supplemental jurisdiction over her state law claims

made herein.

## FACTS

13.    As a young twenty-something year old, Plaintiff held a full-time job and attended college at night to obtain her undergraduate degree. Determined to take out only necessary loans, on January 1, 2003, Plaintiff met with a college financial advisor. Thereafter, Plaintiff entered into an FFELP Master Promissory Note[1] with Sallie Mae, now known as Navient. A true and correct copy of this contract is annexed hereto as **Exhibit A.**

14.    After completing her undergraduate degree summa cum laude, in the top 10% of her class, Plaintiff went on to seek a professional graduate degree. Again, Plaintiff intentionally only took out necessary loans for tuition and books, covering her own living expenses and maintaining nine Dean's Academic Scholarships for the duration of the program, which took care of half of the tuition. Plaintiff graduated at the beginning of the economic downturn of 2007/2008.[2]

15.    When repayment began, on October 10, 2007, Plaintiff consolidated her loans for an agreed upon term and sum. A true and correct copy of this contract is annexed hereto as **Exhibit B.**

16.    Under 34 CFR § 682.102, the repayment period of FFELP Consolidation Loans begins the day the loan is disbursed. Here, it was disbursed on October 10, 2007[3]. This is key for the calculation of the term of the loan.

---

[1] The Higher Education Act of 1965 ("Act") established the Federal Family Education Loan Program (hereinafter "FFELP" and/or "Loan Program")
[2] Global Economic Crisis and/or Great Recession
https://en.wikipedia.org/wiki/2007%E2%80%932008_financial_crisis
[3] Under 34 CFR § 682.102(e), *Consolidation loan repayment.* Generally, the repayment period for a Consolidation loan begins on the day the loan is disbursed. The first payment of principal and interest on a Consolidation loan is due from the borrower within 60 days after the borrower's liability on all loans being consolidated has been discharged.

17.     On October 8, 2007[4], Sallie Mae represented that the payoff date was 2037 as excerpted from their correspondence below, calculated as <u>30</u> years after the 2007 date of disbursement:

| | | |
|---|---|---|
| 36 | $301.26 | 12/09/2007 |
| 323 | $401.22 | 12/09/2010 |
| 1 | $409.22 | 11/09/2037 |

18.     Plaintiff was considered a "new borrower" under the statute, so the 30-year term was incorrectly applied. Specifically, 34 CFR § 682.209(a)(6)(ix) subtitled "Conversion of a loan to repayment status" states, "A 'new borrower' is an individual who has no outstanding principal or interest balance on an FFEL Program loan as of October 7, 1998, or on the date he or she obtains an FFEL Program loan after October 7, 1998."   The following is excerpted directly from the statute:

> **(ix)** Under an extended repayment schedule, a new borrower whose total outstanding principal and interest in FFEL loans exceed $ 30,000 may repay the loan on a fixed annual repayment amount or a graduated repayment amount for a period that may not exceed 25 years. For purposes of this section, a "new borrower" is an individual who has no outstanding principal or interest balance on an FFEL Program loan as of October 7, 1998, or on the date he or she obtains an FFEL Program loan after October 7, 1998.

19.     Notice that the definition for "new borrower" is also applied to "graduated repayment" which was originally selected when Plaintiff applied for the consolidation loan as excerpted below[5]:

| 26. Repayment Options (select one): | ☐ GRAD CHOICE ™ 2 with two years of reduced payments | ☐ GRAD CHOICE ™ 4 with four years of reduced payments | ☐ INCOME-SENSITIVE PAYMENT PLAN | ☐ EXTENDED PAYMENT PLAN with two years of interest-only payments |
|---|---|---|---|---|
| ☐ STANDARD PAYMENT PLAN | ☒ GRAD CHOICE ™ 3 with three years of reduced payments | ☐ GRAD CHOICE ™ 5 with five years of reduced payments | ☐ EXTENDED PAYMENT PLAN with standard payments | ☐ EXTENDED PAYMENT PLAN four years of interest-only payments |

---

[4] See **Exhibit C** 01 which is a true and correct copy, save for redactions for privacy, is attached hereto and incorporated herein by reference.
[5] See Exhibit B 03 which is a true and correct copy, save for redactions for privacy, is attached hereto and incorporated herein by reference.

20.     Thus, the statute defines Plaintiff as a "new borrower" and expressly limits the term of the loan to 25 years, not 30 years. However, SLM/Navient improperly applied a 30-year term to Plaintiff, never properly administering Plaintiff's loans from day one.

21.     This was not discovered until years later, as Plaintiff relied on SLM/Navient to properly service the loans and relied on their representations.

22.     Thereafter, due to the difficult economic situation, Navient/SLM pushed Plaintiff into deferments and/or forbearances between 2007 and 2016, but Plaintiff was encouraged to make as many overpayments as possible by Navient/SLM representatives. Plaintiff consistently overpaid her loans and even paid additional payments through deferments as much as possible. However, Plaintiff was never advised that any of these overpayments were not going toward the term of the note.

23.     In 2013, while technically in a deference period, upon obtaining a windfall, Plaintiff made a large lump sum payment towards the loans. Plaintiff advised SLM that she wanted to shorten her note and pay down her balances. However, without any supporting calculation, ***Navient used the payment of the large lump sum as an opportunity <u>to extend</u> Plaintiff's loans again*** instead of shortening the term and paying down the notes faster. Following the lump sum payment, SLM's correspondence dated November 29, 2013[6], showed a payoff term of **2042** as excerpted below:

| No. of Payments | Payment Amount | Due Date |
|---|---|---|
| 345 | 153.83 | 02/09/14 |
| 1 | 133.80 | 11/09/42 |

---

[6] See **Exhibit D,** which is a true and correct copy, save for redactions for privacy, is attached hereto and incorporated herein by reference.

24.     The above calculation is long passed the 25-year term limit of the loans, even if periods of deferment or forbearance are added.[7] Per Plaintiff's calculation, the latest that the loan terms could be extended under the applicable statute was 2036.[8]

25.     Thereafter, on February 7, 2016, Navient stated that Plaintiff entered into Extended Repayment Loan Program Level/Fixed, ***again, it extended the term*** of the note beyond the statutory limit and provided a payoff date of August 25, **2043**.[9]

| No. of Payments | Payment Amount | Due Date |
|---|---|---|
| 329 | $285.13 | 03/25/16 |
| 1 | $316.86 | 08/25/43 |

26.     Since 2016, having made overpayments on a near monthly basis, and not taking of deferments or forbearances (even during the pandemic), it came to light in August 2022, that Navient was disregarding all the additional payments made. Instead, Navient made the following assertion via email correspondence, signed by Jennifer, Loan Serving Specialist incorporated and excerpted below:[10]

> Our records indicate you are in Extended Repayment Loan Program - Level/Fixed.  Under this program, your payments are level/fixed for the remaining terms until the loan is paid in full. You began this program February 7, 2016.
>
> Your payment schedule in the amount of $285.13 for 251 months through July 25, 2043, $316.86 August 25, 2043. You may leave/change plans at any time for another eligible plan.

27.     This means that *none* of the overpayments were applied properly as this would be impossible in light of the number of overpayments made by this point, which would have paid the

---

[7] Per Plaintiff's calculation under the statute, the maximum loan term per the statute is October 10, 2007, + 25 years + 3.6 years of periods of deferment and/or forbearance (provided by Navient's correspondence dated March 23, 2023), which is approximately June 10, 2036.

[8] Id.

[9] See **Exhibit E,** which is a true and correct copy, save for redactions for privacy, is attached hereto and incorporated herein by reference.

[10] See **Exhibit F,** which is a true and correct copy, save for redactions for privacy, is attached hereto and incorporated herein by reference.

loan ahead by *years* or shortened the term by years, however calculated.

28.     Even worse, after Plaintiff noticed the issues with the application of principal and interest, she began asking questions. As a result of these questions to Navient, on October 26, 2022, Navient again unilaterally changed the terms of Plaintiff's note—this time ***extending it eleven (11) years***--as excerpted below:[11]

> If you make all remaining payments on time according to this schedule, we estimate that your loans will be paid off in 08/2054.
>
> *Your updated payment schedule:*
>
> | Number of Payments | Payment Amount ($) | Due Date |
> |---|---|---|
> | 382 | 212.30 | 11/25/22 |

29.     This was despite all of the monthly overpayments made to Navient, and no change in payment plan, although Navient suddenly claimed there was a change from "Extended Repayment" to "Extended Repayment" which makes no sense. The new payoff year of 2054 was **FIFTY-ONE years** since entering the original MPN and FORTY-SEVEN YEARS since the 2007 disbursement of the loan, clearly in violation of the statute's 25-year period.[12]

30.     Plaintiff attempted to resolve this matter with Navient from 2022 through 2023. As a result, on August 11, 2023, ***Navient again unilaterally changed the terms***, subtracting two years, and claiming the loans would be paid off in April **2052** as excerpted below:[13]

> *This may not reflect your entire repayment schedule. To view a complete repayment schedule, log in to your Navient.com account.*
>
> If you make all remaining payments on time according to this schedule, we estimate that your loans will be paid off in 04/2052.

---

[11] A true and correct copy, save for redactions for privacy, is attached hereto and incorporated herein as **Exhibit G.**
[12] § 34 CFR 682.100, et. seq
[13] A true and correct copy, save for redactions for privacy, is attached hereto and incorporated herein as **Exhibit H**.

31.     Navient refused to admit the entire calculation error, only after being presented with the statute did Navient admit that 2054 and 2052 were incorrect terms. Thereafter, <u>Navient **again manipulated Plaintiff's loans,**</u> this time reducing the term to **2043**, which is still incorrect by law.

32.     But immediately after that change of terms, Navient unilaterally moved Plaintiff into an ***unapplied for*** Income Sensitive Repayment plan.[14] Plaintiff demanded proof of the application that Navient claimed was the motivation behind the move into ISR. Navient refused to provide proof.

33.     At this point, due to the misuse of her personal information, Plaintiff filed an identity theft report with the FTC and notified all credit bureaus. After this report and several weeks passed, Navient then admitted that the ISR plan was improperly applied and removed it from Plaintiff's loans, but still insisted on the 2043 payoff date and miscalculated term.

34.     As detailed above, Navient completely failed to make appropriate monthly disclosures under 34 CFR § 682.205(a)(3), as all of the disclosures made were all incorrect as a result of the failure to calculate the term under the statute properly.

### Navient's Steering of Plaintiff into Costly Forbearance instead of Income Driven Repayment

35.     In addition to the foregoing, Navient, formerly known as Sallie Mae, Inc., was the largest student loan servicer in the United States. Plaintiff enrolled into higher education in the 2000's when Sallie Mae was the only student loan servicer offered to her at the time.

36.     SLM/Navient's principal responsibilities as a servicer include managing borrowers' accounts, including Plaintiff's; processing monthly payments; assisting borrowers and

---

[14] See **Exhibit I,** which is a true and correct copy, save for redactions for privacy, is attached hereto and incorporated herein by reference.

including Plaintiff to learn about, enroll in, and remain in alternative repayment plans; and communicating directly with borrowers, including Plaintiff about the repayment of loans.

37.     Despite representing to Plaintiff that Navient would help her find the right repayment option for her circumstances, Navient steered Plaintiff into multiple consecutive costly payment relief designed for borrowers experiencing short-term financial problems, before or instead of affordable long-term repayment options that were more beneficial to her in light of her financial situation.  Navient then encouraged Plaintiff to make as many payments as possible during these periods of forbearance, knowing they would apply most of those payments to interest, and not apply those payments toward the term of the loan.

38.     Plaintiff consolidated her loans and ultimately enrolled in an Extended Standard Repayment Plan.  Plaintiff was reassured that all of the payments made towards the loan would count to the term of the note.  They were not. Thus, Navient failed to abide by the statutory requirements of the Federal Family Education Program, 34 CFR § 682.100, et. seq., misrepresented the consequences of switching payment plans,

### *Navient's Payment Processing Errors*

39.     Navient's primary responsibility as a student loan servicer is to process payments made by borrowers and cosigners on their student loan accounts.

40.     In addition to the miscalculations under the term of the note already described herein, Navient ignored directions on overpayments, failing to apply them to principal as Plaintiff requested, or pay the loan ahead as required by statute.

41.     Specifically, Plaintiff overpaid nearly every monthly note and those payments were not applied either per her directions (to the principal), nor where they used to pay the loan ahead

as mandated by statute.  Instead, there appears to be no systematic method used by Navient in applying payments to Plaintiff's accounts.

42.     For example, in 2023, every single one of the 18 overpayments made by Plaintiff via check stated in writing that the payment was to be applied to the principal.  None of them were.

43.     When Plaintiff discovered the myriad of issues as a result of her principal not being reduced in connection with her monthly overpayments and contacted Navient, Navient then spent a year changing her loan terms numerous times without explanation or cause and ultimately claiming she had re-enrolled in the same Extended Repayment Plan (starting an entirely new term of 30 years beginning in 2023, prohibited by law, and for absolutely no benefit), and then unilaterally enrolled her in an unapplied for ISR plan.

44.     Errors made by Navient in the processing of payments received from Plaintiff resulted in Plaintiff incurring improper late fees, increased interest charges, the furnishing of inaccurate negative information to consumer reporting agencies, and the loss of certain benefits.

### *Violations of the Fair Credit Reporting Act*

45.     Plaintiff reported the identity theft under the FTC with regard to the fraudulent documents created by and/or submitted to Navient. Plaintiff also disputed the loans. Despite these disputes, Navient failed to properly report to the credit bureaus.  To date, Navient continues to misreport these loans to the credit bureaus.

46.     Plaintiff was unable to resolve this matter with the credit bureaus as Navient continued to "verify" their misrepresentations, reducing Plaintiff's credit score over 200+ points, from an excellent to a poor rating, causing Plaintiff damages in higher interest rates on her other

credit obligations, increasing her costs of insurance and services, causing extreme reduction of her credit limits, and triggering financial hardship for Plaintiff, who is a small business owner.

## FIRST CLAIM FOR RELIEF

### *Texas Deceptive Trade Practices Act Against Navient*

47.     Plaintiff realleges and incorporates by reference its allegations in Paragraphs 13 through 46.

48.     Plaintiff sues Defendant under Tex. Bus. & Com. Code Ann. § 17.50(a) (1) for its use or employment of false, misleading and deceptive acts or practices that are specifically enumerated in Tex. Bus. & Com. Code Ann. § 17.46(b) and that were relied on by Plaintiff to her detriment.

49.     Plaintiff is a consumer of goods and services provided by Defendant as defined by the Deceptive Trade Practices Act ("DTPA.") Plaintiff met all conditions precedent to bringing this cause of action against Defendant. Specifically, Defendant's violations of the DTPA include, without limitation, the following matters:

50.     Unconscionable Action/Course of Action: Defendant engaged in an unconscionable action or course of action to the detriment of Plaintiff as that term is defined by Section 17.45(5) of the Texas Business and Commerce Code, by taking advantage of the lack of knowledge ability, experience, or capacity of Plaintiff to a grossly unfair degree.

51.     Violations of Section 17.46(b): By Defendant's acts, omissions, failures, and conduct that are described in this Complaint, Defendant violated 17.46(b) (2), (5), (7), (12), (13), (20), (24) of the DTPA.  In this respect, Defendant's violations include, without limitation, (a) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (b) representing that goods or services have sponsorship, approval,

characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not; (c) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (d) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; (e) knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service; (f) representing that a guaranty or warranty confers or involves rights or remedies which it does not have or involve…; (g) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

52.     The Texas Deceptive Trade Practices Act makes it illegal for a company to represent that goods or services have characteristics or benefits which they do not have or to fail to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. Tex. Bus. & Com. Code Ann. § 17.46(b)(5), (b)(24).

53.     <u>Producing Cause.</u> Plaintiff shows that the acts, practices, and/or omissions complained of were the producing cause of Plaintiff's damages described herein.

54.     <u>Reliance.</u> Plaintiff relied on the information provided by Navient and Plaintiff suffered injury as a result of her reliance.

55.     <u>Notice.</u> Plaintiff notified Defendant of such complaints pursuant to Section 17.505(a) of the Texas Business and Commerce Code by letters, emails, disputes via the CFPB,

and the online portal, and would show compliance with conditions precedent to the filing of this suit and recovery of additional damages and attorney's fees.

56.     In addition to the foregoing factual allegations already stated and incorporated herein, on January 1, 2003, Plaintiff entered into an FFELP Master Promissory Note. A true and correct copy of this contract is annexed hereto as Exhibit A.  Plaintiff relied on Navient's representations that it would properly service her student loan and properly apply payments to same.

57.     On October 10, 2007, Plaintiff consolidated her loans for an agreed upon term and sum. A true and correct copy of this contract is annexed hereto as Exhibit B. Plaintiff relied on Navient's representations that it would properly service her student loan and properly apply payments to same.  However, unbeknownst to Plaintiff, Defendant failed to properly calculate the term of the loan from day one. Thus, all of Plaintiff's payments were improperly applied.

58.     In 2013, Plaintiff made a substantial lump sum on her loans. Navient (SLM's) representative specifically represented to Plaintiff that such substantial lump sum would reduce the term of the note and would count towards the payments made under the loans. Despite the overpayment, Navient did not reduce the term of the note, but instead increased the length of her loans.

59.     On February 17, 2016, Plaintiff was enrolled in Extended Standard Repayment, which again, only permitted a 25-year term of the note pursuant to the statute.  However, Navient used the opportunity to extend the loans again.

60.     Navient failed to properly apply the payments to the principal as requested by Plaintiff and failed to apply the payments made per the statute.  Instead, Navient applied the payments to solely benefit itself.

61.     On August 1, 2022, April 7, 2023, August 21, 2023, September 8, 2023, December 29, 2023, January 1, 2024, January 3, 2024, January 6, 2024, and January 8, 2024, Plaintiff demanded that Defendant fulfill its obligations under the contract, but Defendant refused.

62.     Plaintiff performed all of her obligations and duties under the contract until August 12, 2023, when Navient unilaterally enrolled her into an unapplied for ISR plan. In response Plaintiff filed an identity theft report.

63.     As a result of Defendant's breach of contract, Plaintiff has been damaged in an amount to be determined by the court, but no less than $161,725.47.

**<u>SECOND CLAIM FOR RELIEF</u>**

*Violations of the Fair Credit Reporting Act*

64.     The Plaintiff realleges and incorporates by reference its allegations in the foregoing paragraphs 13-46.

65.     The Fair Credit Reporting Act imposes two general duties on those who give credit information to credit reporting agencies: (1) "a [d]uty of furnishers of information to provide accurate information," 15 U.S.C. § 1681s-2(a); and (2) "[d]uties of furnishers of information upon notice of dispute," including to investigate disputes, correct inaccurate information, and inform the credit reporting agency of an investigation's results, 15 U.S.C. § 1681s-2(b). The text of the statute is excerpted below:

"(1) In general. After receiving notice pursuant to section 611(a)(2) [15 USCS § 1681i(a)(2)] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [15 USCS § 1681i(a)(2)];
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
> > (A)   modify that item of information;
> >
> > (B)   delete that item of information; or
> >
> > (C)   permanently block the reporting of that item of information."

66.     Further, the statute goes on to outline damages: "In general. Any person who willfully fails to comply with any requirement imposed under this title [15 USCS §§ 1681 et seq.] with respect to any consumer is liable to that consumer in an amount equal to the sum of—

> (1)     (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
>
> (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
>
> (2)   such amount of punitive damages as the court may allow; and
>
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court."

67.     Here, Navient provided inaccurate credit information about Plaintiff to consumer reporting agencies, TransUnion, Experian, and Equifax.  Plaintiff notified the consumer reporting agencies that the information on her report was inaccurate on multiple occasions, and to all three of the major credit reporting companies on January 3, 2024, via the Consumer Financial Protection Bureau's website. The consumer reporting agencies notified Navient of the dispute and after receiving this notice, Navient failed to conduct a reasonable investigation and notify the consumer reporting agencies to correct the reporting errors.

68.     Therefore, all conditions precedent were met when Plaintiff gave notice of the dispute to the credit reporting agencies, and the credit reporting agencies notified Navient, and Navient failed to investigate and fix erroneous reports.[15]

69.     As a result of Navient's refusal to investigate and fix the erroneous reports, Plaintiff suffered damages in the loss of credit and detrimental effect on her financial reputation. Plaintiff was subsequently denied credit and faced an increase in interest rates on her other obligations.

70.     Plaintiff further incurred over 80 hours of time attempting to resolve this matter, incurring attorney fees and damages.

### THIRD CLAIM FOR RELIEF
#### *Fraud*

71.     Plaintiff incorporates the foregoing paragraphs 13-46 as if fully reiterated herein.

72.     **Fraud by Nondisclosure:** Plaintiff sues Defendant for fraud by nondisclosure for reason that Defendant did not make proper disclosures to Plaintiff prior to entering this transaction

---

[15] *Young v. Equifax Credit Info. Servs. Inc.*, 294 F.3d 631, 639 (5th Cir. 2002); *Schoch v. Wells Fargo Home Mortg.,* No. 4:16-cv-619, 2017 U.S. Dist. LEXIS 81233, 2017 WL 2385626, at 4 (E.D. Tex. Apr. 11, 2017), *R. & R.* adopted, 2017 U.S. Dist. LEXIS 80799, 2017 WL 2312079 (E.D. Tex. May 26, 2017).

and any modification thereto, to induce Plaintiff to enter into this transaction and thereby, Plaintiff has suffered monetary damages by way of injury.

73.     Specifically, in violation of the Family Federal Education ("FFEL" and/or "FFELP") Program, Plaintiff never received a correct monthly notice required by law that demonstrated the actual amount owed and payable under the proper term of the note, under 34 CFR § 682.205, et. seq.

74.     Plaintiff did not receive any FFEL Program compliant disclosures that would indicate that her note would "start over" or be recast in 2013 when she made a substantial payment.

75.     Plaintiff did not receive any FFEL Program compliant disclosures that described the multiple unexplained extensions and reduction of the loans.

76.     **Common-law Fraud:** Plaintiff sues Defendant for engaging in common-law fraud for making material representations to her that were false, when it knew that such representations were false. Plaintiff relied on these representations, which have caused Plaintiff to suffer injury by way of monetary damages, and intangible damage to her reputation with third parties.

77.     Specifically, Navient fraudulently represented a false term of the notes not authorized by FFEL Program under 34 CFR § 682.209 upon which Plaintiff relied. When Navient was specifically made aware of the code provision it was violating, it continued to make misrepresentations regarding the loan term which caused Plaintiff damages.

78.     Navient engaged in fraud when it specifically misrepresented how the 2013 lump sum overpayment would be applied, knowing that it would not shorten the term of the loan, but instead extended it. Further, it failed to provide disclosures required by the FFELP.

79.     Navient misrepresented that it would abide by its servicing requirements, when it knew that it would misapply Plaintiff's lump sum payment in violation of the FFELP, 34 CFR § 682.209(b)(2)(i), by causing a penalty to the Plaintiff when she repaid a large lump sum to the note and extending the loan, increasing interest.

80.     Navient misrepresented that it would abide by its servicing requirements, when it knew that it would misapply Plaintiff's principal payments in violation of the FFELP 34 CFR § 682.209(b)(2)(i), by causing a penalty to the Plaintiff and extending the terms of the loan, increasing interest.

81.     Navient misrepresented that it would abide by its servicing requirements, when it knew that it would misapply Plaintiff's payments in violation of the FFELP 34 CFR § 682.209(b)(ii), by not applying the prepayment to future installments by advancing the next payment due date, unless the borrower requested otherwise.

82.     Navient misrepresented that it would abide by its servicing requirements, when it knew that it would misapply Plaintiff's payments in violation of the FFELP 34 CFR § 682.209(b)(ii), by not providing a notification to Plaintiff after the payments are received informing the borrower that the payments have been so applied and the date of the borrower's next scheduled payment due date.

83.     Navient misrepresented that it would abide by its servicing requirements when it knew that it would not properly apply Plaintiff's payments to principal and interest.

84.     Navient misrepresented the terms of the note to Plaintiff, when it knew that that the notes were extended beyond the legally permitted time afforded by the FFELP statute. Specifically, Navient misrepresented to Plaintiff that she was not a "new borrower" under the statute, and thus

not entitled to a 25-year note. Further, Navient continually miscalculated the terms of the note, extending a 25-year period to over 50 years!

85.     Navient misrepresented to the Plaintiff that it was properly calculating the terms and the payments to the loan.

86.     Navient misrepresented that deferment and forbearance were appropriate for the Plaintiff each time she entered into those statuses when Navient should have disclosed that an alternative plan was more beneficial to the Plaintiff since the Plaintiff was experiencing long term hardship.

87.     As to each of the foregoing misrepresentations, Plaintiff relied on these representations to her detriment. Further, Plaintiff did not discover the issues with her loans for years due to Navient's fraudulent misrepresentations that it was complying with the due diligence of a lender pursuant to the FFELP statute.

88.     As a result of Navient's fraud and misrepresentations, Plaintiff sustained damages including lost time from work, attempting to resolve this matter, monetary damages, and damages to her financial rating and reputation.

### FOURTH/FIFTH CLAIM FOR RELIEF
***Declaratory Judgment Sought/Material Breach of Contract by Navient***

89.     The Plaintiff realleges and incorporates by reference its allegations in the foregoing paragraphs.

10.     Additionally, and/or alternatively, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and/or alternatively pursuant to the Texas Uniform Declaratory Judgment Act, Plaintiff seeks a declaration of the rights and duties of the Parties in light of Navient's material

breach of contract[16];

11.    Plaintiff seeks a declaration that a material breach of contract by Navient excuses performance by Plaintiff.[17]  Plaintiff further seeks a declaration as to the date the material breach occurred and the rights, duties, and obligations of the Parties herein as a result of the breach.

12.    To prove breach of contract, Plaintiff must show there was a valid contract, Plaintiff tendered performance, Defendant failed to perform, and Plaintiff was damaged as a result.

13.    Here, Plaintiff entered into a Master Promissory Note in order to obtain loans to seek higher education.[18]  The sole purpose of Navient was to properly service and manage Plaintiff's loans pursuant to the terms of the contract, and as mandated by the Higher Education Act of 1965, federal and state consumer protection laws and/or the federal securities laws and SEC rules, regulations and guidance.

14.    Plaintiff complied with the terms of the loan, even attempting to pay it off sooner by overpaying the loan whenever possible, including windfalls she obtained through the years.

15.    Despite Plaintiff's performance, Navient failed to perform its duties as follows:

    a.  Failure to properly maintain and account;

    b.  Failure to provide necessary disclosures;

    c.  Forcing an unauthorized administrative forbearance to increase interest;

---

[16] Upon the filing of the appropriate pleading, a Court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. See 28 U.S.C. § 2201; Tex. Civ. Prac. and Rem. Code § 37.001, et. seq.

[17] Deprivation of a reasonably expected benefit is a circumstance indicating a material breach of contract. See also *X Techs., Inc. v. Marvin Test Sys.*, 719 F.3d 406, 413 (5th Cir. 2013) (when one party materially breaches, the other party is excused or discharged from any obligation to perform); *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam); *Accord Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 437 (Tex. 2017).

[18] Attached hereto as Exhibit A.

d.   Failure to protect Plaintiff's information from unauthorized users;

e.   Charging late fees when it claimed payments were "rolled ahead;"

f.   Failing to apply overages to principal payments despite requests;

g.   Overcharging interest;

h.   Applying penalties prohibited by law to Plaintiff to prevent her from paying off and shorten her loan;

i.   Refusing to provide requested information and documents to Ms. Simpson;

j.   Intentionally providing false information to Ms. Simpson with regard to the terms of the loan;

k.   Modifying the terms of Plaintiff's loan without her knowledge or consent in order to extend the term of the loan and increase interest;

l.   Failing to investigate after notice of issues;

m.   Failure of due diligence in servicing the loan.

n.   Misreporting information to the credit bureau reporting agencies;

o.   Upon information and belief, it appears the Rule of 78 has been applied to these loans, which is prohibited by law.

90.   As a result of Navient's breach of contract, Plaintiff sustained damages including misapplications of payments, lost time from work attempting to resolve this matter, monetary damages, and damages to her financial rating and reputation.

### SIXTH CLAIM FOR RELIEF
#### *Forfeiture And Disgorgement*

91.   Plaintiff incorporates the facts alleged in the foregoing paragraphs as if fully reiterated herein.

92.   Plaintiff sues the Defendant for a forfeiture and disgorgement of all monies paid and/or improperly paid.

## <u>REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF</u>

93.     Plaintiff incorporates the facts alleged in the foregoing paragraph, including 13-46, as if fully reiterated herein.

94.     Pursuant to Federal R. Civ. P. 65(b), Plaintiff hereby seeks injunctive relief with regard to Navient, its agents, representatives, affiliates and/or subsidiaries reporting the alleged debts made the basis of this suit to the consumer reporting agencies during the pendency of this suit.

95.     To obtain injunctive relief, the movant must carry "its burden of proof for each of the four requirements for a preliminary injunction: substantial likelihood of success on the merits, substantial threat of irreparable harm absent an injunction, a balance of hardships in DHS's favor, and no disservice to the public interest." *Daniels Health Scis., LLC v. Vascular Health Scis., L.L.C.,* 710 F.3d 579, 582 (5th Cir. 2013); see *Jordan v. Fisher,* 2016 U.S. App. LEXIS 11734, at *4 (5th Cir. Feb. 10, 2016) (movant must "clearly" carry the burden of persuasion as to all four factors).

96.     The Fifth Circuit has also stated that "[i]n order to obtain a preliminary injunction, the movant must first establish a substantial likelihood of success on the merits." *Butts v. Aultman,* 953 F.3d 353, 361 (5th Cir. 2020).

97.     Note that the Fifth Circuit test requires a showing that the injunction will not disserve the public interest. *Miss. Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir. 1985).

98.     **First Factor – Success on the Merits**. As a threshold matter, parties seeking a pretrial injunction, "are not required to prove their claim, but only to show that they [are] likely to succeed on the merits." *Glossip v. Gross,* 135 S. Ct. 2726, 2792 (2015); *Winter v. Nat. Res. Def.*

*Council, Inc.,* 555 U.S. 7, 22 (2008).

99.     Here, Plaintiff has shown that Navient failed to comply with the requirements of the statute under which it was governed by applying the wrong term to the loans pursuant to the statute, refusing to apply the "new borrower" status to the Plaintiff, manipulating Plaintiff's loan terms at least seven times without cause, misapplying payments, including principal payments, and refusing to investigate the issues properly and continuing to misreport the credit bureaus.  In light of these failures by Navient, it is likely that the Plaintiff will prevail on the merits of this case.

100.    **Second Factor – Irreparable Injury**. A party seeking pretrial injunctive relief must" demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22, (2008).

101.    Plaintiff is a small business owner who had a credit score rating of over 730 prior to the beginning of the dispute with Navient. In August 2023, Navient insisted on its course of action and ultimately put Plaintiff into an ISR plan to which she did not even apply for or qualify, Plaintiff refused to be complicit in Navient's continued financial abuses and abuses of her identity. This resulted in a detrimental report to the credit bureaus which Navient then intentionally failed to rectify. Plaintiff thereafter suffered a loss in her credit rating and was denied credit as a result of Navient's misreporting of information to the credit bureaus. As this suit could take years, the harm to Plaintiff in the interim is irreparable as Plaintiff is a small business owner and her financial reputation is of utmost importance in running a business. Without injunctive relief, she could face the loss or destruction of her entire business[19], and the loss of her business and financial goodwill.

---

[19] Showing a threat of "extinction" is enough to establish irreparable harm, even when damages may be available and the amount of direct financial harm is ascertainable"); *NACM-New Eng., Inc. v. Nat'l Ass'n of Credit Mgmt., Inc.,* 927 F.3d 1, 5 (1st Cir. 2019).

This harm cannot be redressed by a legal or equitable remedy following a trial.

102.    Further, if Navient and its agents are not enjoined from pursuing Plaintiff and improperly reporting against Plaintiff, Plaintiff may suffer deprivation of her professional license.

103.    The irreparable injury is likely as this has already occurred as Plaintiff is beginning to suffer the injury described herein, with the extreme loss to her credit standing and loss and denial of credit.

104.    The cause of the harm by the misreporting and failure of Navient is the cause of the detrimental effects on Plaintiff, and damage to her reputation.

105.    **Third Factor - Balance of Equities.** The "balancing the equities" analysis addresses the harm of granting or denying pretrial injunctive relief upon both parties.

106.    There is no harm to Navient if this injunction is erroneously granted. However, the harm to the Plaintiff is substantial. As previously described, the Plaintiff stands to lose her business and her professional license should Navient and its agents not be enjoined from inappropriately attempting to assert this alleged debt against Plaintiff during the pendency of this suit.

107.    **Fourth Factor – Public Interest.** 'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

108.    Private interests are involved in this suit.  This is not a public matter. The only tangential public interest in this suit is the enforcement of a valid law, which is in favor of the Plaintiff, as the FFELP will be appropriately applied, and Plaintiff's constitutional rights in her reputation and property will be protected.

109.    Thus, this factor is in favor of injunctive relief for the Plaintiff.

110.    Therefore, Plaintiff seeks an injunction against Navient to report her loans during the pendency of this matter and/or to report them as delinquent during the pendency of this matter.

## DAMAGES

111.    As a result of Defendant's actions and omissions, Plaintiff suffered economic damages in the approximate amount of all payments made on these loans, damages to her reputation, loss of credit rating, lost time from work, and attorney's fees and costs.

112.    Further, Plaintiff would show that the false, misleading, and deceptive acts, practices, and/or omissions complained of herein were committed "knowingly" in that Defendant had actual awareness of the falsity, deception, or unfairness of such acts, practices and/or omissions.

113.    Plaintiff further avers that such acts, practices, and/or omissions were committed "intentionally" in that Defendant specifically intended that Plaintiff act in detrimental reliance on the falsity or deception on in detrimental ignorance of the unfairness.

114.    Therefore, Plaintiff is entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code.

115.    Plaintiff is entitled to injunctive relief requiring Defendant and agencies to cease and remove the disputed loans reported to Plaintiff's credit history during the pendency of this suit so that the rights and duties of the parties can be established without further damage to the Plaintiff's credit rating.

116.    Plaintiff also seeks compensatory damages, including damages for pain and suffering, humiliation, embarrassment, and emotional distress, if allowed by law.

## **ATTORNEY'S FEES**

117.    Request is made for all costs and reasonable and necessary attorney's fees incurred

by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal.

## **PRAYER FOR RELIEF**

118.    WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment

against Defendant, granting Plaintiff the following relief:

1.  The entry of judgment in favor of the Plaintiff on each and every cause of action;

2.  Alternatively, the award of the requested equitable relief and disgorgement of all funds paid;

3.  Declaration that Navient has breached the agreement from inception;

4.  The award of costs of the suit and attorney's fees;

5.  Multiplier Damages permitted under the DTPA;

6.  Exemplary Damages; and

7.  Such other relief as the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

118.    Plaintiff demands a trial by jury on all issues that are so triable.

Respectfully submitted,

**THE WOODLANDS LAW FIRM, PLLC**

By: _____
Gwendolyn Simpson, Attorney-in-Charge
Fed No. 2383554
State Bar No. 24049994
gwen@woodlands.law
Bryan C. Holman, Associate Counsel
Fed. No. 3871947
State Bar No. 24137329
bryan@woodlands.law
 2219 Sawdust Rd., Suite 803
The Woodlands, Texas 77380
Telephone: (832) 626-0116
Facsimile: (429) 922-2505

**COUNSEL FOR PLAINTIFF**

## **VERIFICATION**

1.1     I, <u>Gwendolyn Simpson</u>, am over the age of 18 years of age, am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein and in Plaintiff's Original Verified Complaint and Request for Preliminary Injunction.

1.2     I am personally acquainted with the facts alleged in paragraphs 13-46 and 93-116 herein and they are true and correct to the best of my knowledge and belief. Further, as stated in the Petition, my credit score dropped significantly, and I suffered the loss of substantial credit extension as a result of Navient's acts made the basis of this suit.  Continued damages are anticipated to occur so long as Navient continues to report the disputed loans.

1.3     Further, I am the custodian of records for The Woodlands Law Firm and myself, individually. I am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities.

1.4     Save only for the redactions of personal identifying information, the records attached to Plaintiff's Original Complaint are original or exact duplicates of the original records of the aforementioned entity and/or received by me from Defendant. Upon information and belief, these records were made at or near the time of each act, event, condition, opinion, analysis set forth and/or they were made by, or from information transmitted by, persons with knowledge of the matters set forth. They were kept in the course of regularly conducted business activity. It was the regular practice of the business activity to make and/or keep said records.

1.6     The information contained in the records attached hereto is true and correct to the best of my knowledge. This affidavit complies with Texas law and is made under penalty of perjury.

EXECUTED ON <u>JUNE 3, 2024.</u>

_Gwendolyn Simpson_
Gwendolyn Simpson

### **ACKNOWLEDGMENT**

THE STATE OF TEXAS              §
                                §
COUNTY OF MONTGOMERY            §

Before me, Courtney Fields, the undersigned notary, on this day personally appeared Gwendolyn Simpson, known to me or proved to me upon examination of his/her identity card or

other document to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 3rd day of June, 2024



Notary Public, State of Texas

Printed Name: <u>Courtney Fields</u>

**Federal Family Education Loan Program (FFELP)**

Guarantor, Program, or Lender Identification

OMB No. 1845-0006
Form approved
Exp. date 9-30-2005

# Federal Stafford Loan
# Master Promissory Note

JAN – 7 2003

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties which may include fines, imprisonment, or both, under the United States Criminal Code and 20 U.S.C. 1097.

**TG™**

(800) 845-6267
www.tgslc.org

## Borrower Information

*Please print neatly or type. Read the instructions carefully.*

| 1. Last Name | First Name | MI | 2. Social Security Number |
|---|---|---|---|
| Simpson | Gwendolyn | J | ▉ |

| 3. | 4. Home Area Code/Telephone Number |
|---|---|
| | 337 |

| City | State | Zip Code | 6. Driver's License State and Number | 7. E-mail Address |
|---|---|---|---|---|
| | | | State TX # ▉ | ▉son@charter.net |

| 8. Lender Name | City | State | 9. Lender Code, if known |
|---|---|---|---|
| Chase | Tampa | FL | 807807 |

**10. References:** You must provide two separate references with different U.S. addresses. The first reference should be a parent (if living) or legal guardian. Both references must be completed in full.

| | A. Name | B. |
|---|---|---|
| Name | Jacquelyn Jay | Glenda Simmon |
| Permanent Address | | |
| City, State, Zip Code | | |
| E-mail Address | | |
| Area Code/Telephone Number | ( | |
| Relationship to Borrower | mother | aunt-in-law |

**11. Requested Loan Amount:** I request a total amount of subsidized and unsubsidized loans under this Master Promissory Note not to exceed the allowable maximums under the Higher Education Act. My school will notify me of the type(s) and amount(s) of loan(s) that I am eligible to receive. I may cancel my loan or request a lower amount by contacting my lender or school. Additional information about my right to cancel a loan or request a lower amount is included in the Borrower's Rights and Responsibilities Statement and Disclosure Statements that have been or will be provided to me.

**12. Interest Payments (Optional):**
☐ I want to pay unsubsidized interest while I am in school.

## Borrower Certifications and Authorizations

*Read carefully before signing below.*

**13. Under penalty of perjury I certify that:**

A. The information I have provided on this Master Promissory Note and as updated by me from time to time is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

B. I will immediately repay any loan proceeds that cannot be attributed to educational expenses for attendance on at least a half-time basis at the school that certified my loan eligibility.

C. (i) I do not now owe an overpayment on a Federal Pell Grant, Supplemental Educational Opportunity Grant, or a Leveraging Educational Assistance Partnership Grant (formerly State Student Incentive Grant); or, if I owe an overpayment, I have made repayment arrangements with the holder to repay the amount owed. (ii) I am not now in default on any loan received under the Federal Perkins Loan Program (including NDSL loans), the Federal Direct Loan Program, or the Federal Family Education Loan Program ("FFELP" as defined in the Borrower's Rights and Responsibilities Statement); or (iii) I am in default on a loan, and I have made satisfactory arrangements with the holder of the defaulted loan.

**14.** For all subsidized and unsubsidized Federal Stafford Loans (as described in the additional MPN provisions and the Borrower's Rights and Responsibilities Statement) I receive under this Master Promissory Note, and for certain other loans as described below, I make the following authorizations:

A. I authorize my school to certify my eligibility for loans under this Master Promissory Note.

B. I authorize my school to transfer loan proceeds received by electronic funds transfer (EFT) or master check to my student account.

C. I authorize my school to pay the lender any refund that may be due up to the full amount of the loan(s).

D. I authorize the lender, the guarantor, or their agents, to investigate my credit record and report information concerning my loan status to persons and organizations permitted by law to receive such information.

E. I request and authorize my lender to: (i) during the in-school and grace periods of any loans made under this Master Promissory Note, defer and align the repayment of principal on all of my FFELP loans that are in repayment status; and (ii) add unpaid interest that accrues on all my FFELP loans to the principal balance of such loans ("capitalization") including such loans made under this Master Promissory Note, during forbearance periods, and for unsubsidized loans, during in-school, grace, and deferment periods as provided under the Act. "Capitalization" will increase the principal balance on my loans and the total amount of interest charges I must pay.

F. I authorize the release of information pertinent to my loans: (i) by the school, the lender, and the guarantor, or their agents, to the references on the applicable loans and to members of my immediate family unless I submit written directions otherwise; and, (ii) by and among my schools, lenders, guarantors, the Department of Education, and their agents.

G. So that the loans requested can be approved, I authorize the Department of Education to send any information about me that is under its control, including information from the Free Application for Federal Student Aid, to the school, the lender, and to state agencies and nonprofit organizations that administer financial aid programs under the FFELP.

## Promise to Pay

*In this Master Promissory Note (MPN), "lender" refers to, and this MPN benefits, the original lender and its successors and assigns, including any subsequent holder of this MPN.*

**15.** I promise to pay to the order of the lender all loan amounts disbursed under the terms of this MPN, plus interest and other charges and fees that may become due as provided in this MPN. I understand that multiple loans may be made to me under this MPN. I understand that by accepting any disbursements issued at any time under this MPN, I agree to repay the loans. I understand that, within certain time frames, I may cancel or reduce the amount of any loan by refusing to accept or by returning all or a portion of any disbursement that is issued. Unless I make interest payments, interest that accrues on my unsubsidized loans during in-school, grace, and deferment periods will be added as provided under the Act to the principal balance of such loans. If I do not make any payment on any loan made under this MPN when it is due, I will also pay reasonable collection costs, including but not limited to attorney's fees, court costs, and other fees. I will not sign this MPN before reading the entire MPN, even if I am told not to read it, or told that I am not required to read it. I am entitled to an exact copy of this MPN and the Borrower's Rights and Responsibilities Statement. My signature certifies I have read, understand, and agree to the terms and conditions of this MPN, including the Borrower Certifications and Authorizations printed above, the Notice About Subsequent Loans Made Under This MPN, and the Borrower's Rights and Responsibilities Statement.

**I UNDERSTAND THAT I MAY RECEIVE ONE OR MORE LOANS UNDER THIS MPN, AND THAT I MUST REPAY ALL LOANS THAT I RECEIVE UNDER THIS MPN.**

| 16. Borrower's Signature | 17. Today's Date (Month/Day/Year) |
|---|---|
| *Gwendolyn Simpson* | 1-1-03 |

**Exhibit A  01**

*Additional MPN provisions follow*

**NO ADDITIONAL PAGES PROVIDED TO PLAINTIFF**

**Exhibit A  02**

# Federal Family Education Loan Program (FFELP)

# Federal Consolidation Loan
# Application and Promissory Note

| | | |
|---|---|---|
| | Guarantor, Program, or Lender Identification | WEB |

OMB No. 1845-0036
Form approved
Exp. date 01/31/2010

████████ 12301804

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form or any accompanying documents is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

10/02/2007

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW LOAN ACCOUNT:** To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens a loan account. What this means for you:  Your name, address, date of birth, and other information collected in this form will be used to verify your identity.  You may also be asked to provide your driver's license or other identifying documents.

## Before You Begin

Read the Instructions for Completing the Federal Consolidation Loan Application and Promissory Note. Print using dark ink ballpoint pen or type. This form must be signed and dated by the applicant. **\*\*PAGES 1, 2, AND 3 OF THIS FORM MUST BE SUBMITTED FOR YOUR APPLICATION TO BE PROCESSED.\*\***

## Section A. Borrower Information

| 1. Last Name | First Name | MI | 2. Social Security Number |
|---|---|---|---|
| SIMPSON | GWENDOLYN | J | ████████ |

3A. Permanent Address (Include Number, Street, Apartment Number; or Rural Route Number and Box Number, as applicable) City, State, Zip Code
████████

3B. Permanent Mailing Address, if different from 3A. (Include P.O. Box or General Delivery, as applicable) City, State, Zip Code

| 4. Area Code/Telephone Number | 5. Former Name(s) |
|---|---|
| ( ██ ██ ) ██ 3337 | N/A |

| 6. Date of Birth (mm-dd-yyyy) | 7. Driver's License State and Number |
|---|---|
| ████████ | State TX  ██████ 040 |

| 8. E-mail Address |
|---|
| ████ 979@HOTMAIL.COM |

| 9. Employer Name |
|---|
| N/A |

| Address | | | |
|---|---|---|---|
| City | State | Zip Code | Work Area Code/Telephone Number<br>( ) |

| 10. Consolidating Lender Name | 11. Lender Code, if known |
|---|---|
| Sallie Mae | |

## Section B. Reference Information

References:  You must provide two separate references with different addresses who have known you for at least three years. Both references must be completed in full. Do not include individuals who live with you (e.g., your spouse) or who live outside the United States.

| | A. | B. |
|---|---|---|
| 12. Name | JACKIE  JOY | MARY  HERMANN |
| Permanent Address | ████████ | ████████ |
| City, State, Zip Code | ████████ | ████████ |
| E-mail Address (optional) | N/A | N/A |
| Area Code/Telephone Number | ( ██ ) ██████ | ( ████ ) 845 |
| Relationship to Borrower | Parent | Relative |

## Section C. Promissory Note  (To be completed and signed by the borrower.)

(In this Promissory Note, "lender" refers to, and this Promissory Note benefits, the original consolidating lender and its successors and assigns, including any subsequent holder of this Promissory Note.)

13. Promise to Pay:

I promise to pay to the order of the lender all sums disbursed (hereafter "loan") under the terms of this Promissory Note (hereafter "Note") to pay off my prior loan obligations, plus interest and other charges and fees that may become due as provided in this Note. Unless I make interest payments, interest that accrues on my loan during forbearance periods and on the unsubsidized portion of my loan during deferment periods may be added, as provided under the Act, to the principal balance of my loan. If I do not make any payment on this Note when it is due, I will also pay reasonable collection costs, including but not limited to attorney's fees, court costs, and other fees.

I will not sign this Note before reading the entire Note, even if I am told not to read it, or told that I am not required to read it. I am entitled to an exact copy of this Note and the Borrower's Rights and Responsibilities Statement. My signature certifies I have read, understand, and agree to the terms and conditions of this Note, including the Borrower Certification and Authorizations and the Borrower's Rights and Responsibilities Statement.

**I UNDERSTAND THAT THIS IS A LOAN THAT I MUST REPAY.**

| 14. Borrower's Signature | GWENDOLYN  SIMPSON | Today's Date (mm-dd-yyyy) | ██████ **Exhibit B  01** |
|---|---|---|---|

90B4F01E3843A6DCD6B9CACDCB11F686

Borrower Name  SIMPSON             GWENDOLYN    J        Social Security Number ▮▮▮▮▮▮▮
Please print.

## Section D.1. Education Loan Indebtedness — Loans You Want to Consolidate

*Read the instructions before completing this section.* List each federal education loan you want to consolidate, including each loan (if any) currently held by the lender that will be consolidating your loans. Use the Loan Codes listed in the instructions. The loan holder/servicer is the entity to which you send your payments. If you need to list additional loans, use the Additional Loan Listing Sheet included in this package. (If an Additional Loan Listing Sheet is not included, you may obtain one from your consolidating lender.) List each loan separately. Please print. **ONLY LIST LOANS THAT YOU WANT TO CONSOLIDATE IN THIS SECTION.**

| 15. Loan Code (See Instructions) | 16. Loan Holder/Servicer Name and Mailing Address (See Instructions) | 17. Loan Account Number | 18. Interest Rate | 19. Estimated Payoff Amount |
|---|---|---|---|---|
| STF3 | SALLIE MAE TRUST (MUSTANG II) 1002 ARTHUR DRIVE        LYNN HAVEN, FL | ▮▮▮▮1-10 | 6.62 | $8,207.34 |
| STFS | SALLIE MAE TRUST (MUSTANG II) 1002 ARTHUR DRIVE        LYNN HAVEN, FL | ▮▮▮▮1-11 | 6.62 | $8,500.00 |
| CNSS | SALLIE MAE TRUST - LSC/FL 1002 ARTHUR DRIVE        LYNN HAVEN, FL | ▮▮▮-1-12 | 2.875 | $8,415.42 |
| CNSL | SALLIE MAE TRUST - LSC/FL 1002 ARTHUR DRIVE        LYNN HAVEN, FL | ▮▮▮-1-13 | 2.875 | $27,913.46 |
| STFS | SALLIE MAE TRUST (MUSTANG II) 1002 ARTHUR DRIVE        LYNN HAVEN, FL | ▮▮▮-1-15 | 6.8 | $8,500.00 |
| STF3 | SALLIE MAE TRUST (MUSTANG II) 1002 ARTHUR DRIVE        LYNN HAVEN, FL | ▮▮▮-1-16 | 6.8 | $10,624.30 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**20. Grace Period End Date** – If any of the loans that you have selected for consolidation are in a grace period, you can delay the processing of your Federal Consolidation Loan until the end of your grace period by entering your expected grace period end date in the space provided. If you leave this field blank, your Federal Consolidation Loan will be processed and any selected loans that are in a grace period will enter repayment immediately upon consolidation.

(month/year) _____

## Section D.2. Education Loan Indebtedness — Loans You Do Not Want to Consolidate

*Read the instructions before completing this section.* List each education loan that you are not consolidating but want considered in calculating your maximum repayment period. Remember to include each loan (if any) held by the lender that will be consolidating your loans, but that you do not want to include in your Federal Consolidation Loan. Use the Loan Codes listed in the instructions. The loan holder/servicer is the entity to which you send your payments. If you need to list additional loans, use the Additional Loan Listing Sheet included in this package. (If an Additional Loan Listing Sheet is not included, you may obtain one from your consolidating lender.) List each loan separately. Please print. **ONLY LIST LOANS THAT YOU DO NOT WANT TO CONSOLIDATE IN THIS SECTION.**

| 21. Loan Code (See Instructions) | 22. Loan Holder/Servicer Name and Mailing Address (See Instructions) | 23. Loan Account Number | 24. Interest Rate | 25. Current Balance |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  | **Exhibit B  02** |

Borrower Name  SIMPSON                    GWENDOLYN    J      Social Security Number ▮▮▮▮▮▮▮
Please print.

---

## Section E. Repayment Plan Selection

**Item 26:** You may choose one of the repayment options described above for you Federal Consolidation Loan.  The maximum repayment period will be 10 to 30 years depending on your student loan debt.  You can request a payment period that is shorter than the maximum period allowed.  If you do not notify your lender of your choice of payment plans or do not provide your lender with the required documentation for an income-sensitive schedule, your lender will establish a standard payment schedule.

**26.** Repayment Options (select one):

- [ ] GRAD CHOICE ℠ 2 with two years of reduced payments
- [ ] GRAD CHOICE ℠ 4 with four years of reduced payments
- [ ] INCOME-SENSITIVE PAYMENT PLAN
- [ ] EXTENDED PAYMENT PLAN with two years of interest-only payments
- [ ] STANDARD PAYMENT PLAN
- [X] GRAD CHOICE ℠ 3 with three years of reduced payments
- [ ] GRAD CHOICE ℠ 5 with five years of reduced payments
- [ ] EXTENDED PAYMENT PLAN with standard payments
- [ ] EXTENDED PAYMENT PLAN four years of interest-only payments

---

## Section F. Borrower Certification and Authorization

**27.** Under penalty of perjury, I certify that:

**A.** The information I have provided on this Federal Consolidation Loan Application and Promissory Note and as updated by me from time to time is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

**B.** I do not have any other application pending for a Federal Consolidation Loan.

**C.** All of the loans selected for consolidation have been used to finance my education or the education of my dependent student(s).

**D.** All of the loans selected for consolidation are in a grace period or in repayment (including loans in deferment or forbearance).

**E.** If I have an outstanding Federal Consolidation Loan, I am eligible for another Federal Consolidation Loan because: (i) I have another eligible loan(s), or (ii) I am consolidating a Federal Consolidation Loan with at least one other eligible loan.

**F.** If I owe an overpayment on a Federal Perkins Loan, Federal Pell Grant, Federal Supplemental Educational Opportunity Grant, Academic Competitiveness Grant (ACG), National Science or Mathematics Access to Retain Talent (SMART) Grant, or Leveraging Educational Assistance Partnership Grant, I have made satisfactory arrangements with the holder to repay the amount owed.

**G.** I am not now in default on any loan that I am consolidating, or, if I am in default, I have either (a) made satisfactory arrangements with the holder of the defaulted loan(s) to repay the amount owed, or (b) for Federal Stafford, SLS, PLUS, or Consolidation loans, I agree to repay the Federal Consolidation Loan under income-sensitive repayment terms.

**H.** If I have been convicted of, or pled *nolo contendere* (no contest) or guilty to, a crime involving fraud in obtaining federal student assistance under Title IV of the Higher Education Act of 1965, as amended, I have completed the repayment of those funds to the U.S. Department of Education (the Department), or to the loan holder in the case of a Title IV federal student loan.

**I.** I am not subject to a judgment secured through litigation or to an order for wage garnishment, except as I have disclosed.

**28.** I make the following authorizations and statements of understanding:

**A.** I understand that the amount of my Federal Consolidation Loan will be based on the payoff amounts of my outstanding eligible loans that I selected for consolidation, as provided by the holders of those loans, and may exceed my estimate of such payoff amounts.  The actual payoff amounts may differ from the estimated payoff amounts because the holders will include unpaid principal, unpaid accrued interest, and other costs as permitted by federal regulations in the payoffs reported to the consolidating lender.  I understand that if any collection costs are owed on the loans selected for consolidation, these costs may be added to the principal balance of the Federal Consolidation Loan and, in the case of Federal Stafford, SLS, PLUS, or Consolidation loans in default and held by a guaranty agency, may not exceed 18.5 percent of the outstanding principal and interest on the loan at the time the holders certify the payoff amounts.

**B.** I understand that I may no longer be eligible for some deferments and for subsidized deferment periods on some loans being consolidated.  I also understand that I may no longer be eligible for some loan discharges and types of forgiveness that were available on the loans being consolidated.

**C.** I authorize the consolidating lender to contact the holders identified on my application to determine the eligibility and/or payoff amounts for the loans I have selected for consolidation.  I further authorize those holders to release that information.

**D.** I authorize the consolidating lender to send the proceeds of my Federal Consolidation Loan to each holder of the loans I have identified to pay off the debts.

**E.** If the amounts my consolidating lender sends to my holders exceed the amounts needed to pay off the balances of the selected loans, I understand that the holders will refund the excess to my consolidating lender to be applied against the outstanding balance of this loan.  If the amounts my consolidating lender sends to my holders are less than the amounts needed to pay off the balances of the loans selected for consolidation, I will be responsible for notifying my consolidating lender about the remaining amounts.  I authorize the consolidating lender to include the remaining amounts in this Federal Consolidation Loan, unless I pay off the remaining balances.

**F.** I authorize the consolidating lender, the guarantor, or their agents to investigate my credit record and report information concerning my loan status to persons and organizations permitted by law to receive such information.

**G.** I authorize the release of information pertinent to my loan: (i) by the school(s), the lender, and the guarantor, or their agents, to the references on this loan and to members of my immediate family unless I submit written directions otherwise; and (ii) by and among my schools, lenders, guarantors, the Department, and their agents.

**H.** If I have HEAL loans serviced by the consolidating lender and such loans are not included in this Federal Consolidation Loan, I authorize the establishment of a combined payment plan on my behalf.

**Review your Federal Consolidation Application and Promissory Note to ensure you completed all sections, including Section E above.**

**Exhibit B  03**

# Federal Consolidation Loan Application and Promissory Note *(continued)*

## Disclosure of Terms

This Note applies to Federal Consolidation Loans made under the Federal Family Education Loan Program. In this Note, the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), and applicable U.S. Department of Education regulations are collectively referred to as the "Act." In this Note, references to "the Department" mean the U.S. Department of Education.

At or about the time my Federal Consolidation Loan is disbursed, a disclosure statement and repayment schedule ("disclosure") will be provided to me. This disclosure will identify my Federal Consolidation Loan amount and additional terms of the loan. If I have questions about the information disclosed, I will contact the lender. If the information in this Note conflicts with information in the disclosure, the specific terms and information in the disclosure apply to my loan.

Important additional terms of this loan are disclosed in the Borrower's Rights and Responsibilities Statement accompanying this Note.

I agree that the lender may sell or assign my loan to another eligible holder.

## Interest

Unless my lender notifies me in writing of a lower rate(s), the rate(s) of interest for my loan is that specified in the Act. Interest rate information is presented in the Borrower's Rights and Responsibilities Statement accompanying this Note. The interest rate is presented in a disclosure that is provided to me.

Interest accrues on the unpaid principal balance of my Federal Consolidation Loan from the date of disbursement by the lender until the entire principal balance is paid in full. This includes interest accruing during any period of deferment or forbearance. I agree to pay all interest charges on my loan except for interest payable by the federal government under the Act.

I will be responsible for the interest that begins accruing upon disbursement of my loan. If I do not make payments of interest before the beginning of principal repayment, or during a period of authorized deferment or forbearance, I agree that the lender may capitalize such interest to the extent permitted by the Act.

Except for any portion of the Federal Consolidation Loan attributable to a HEAL Loan, this loan will bear simple interest at an annual rate that is fixed for the term of the loan. The maximum interest rate on this loan will be equal to the weighted average of the interest rates (as certified by the holder) on the loans being consolidated, rounded up to the nearest higher one-eighth of one percent, not to exceed 8.25 percent.

If I choose to consolidate a fixed rate Federal ALAS/SLS Loan(s) or Federal PLUS Loan(s), I request that the existing interest rate of each loan be converted before consolidation to the refinancing rate provided for in the Act, if that rate is lower than the existing rate. If my lender grants this request, I understand there will be no separate document evidencing this refinancing.

For the portion of the Federal Consolidation Loan attributable to a HEAL loan (if applicable), the interest rate is a variable rate and is adjusted annually on July 1. The variable rate for each 12-month period will be equal to the average of the bond equivalent rates of the 91-day Treasury Bills auctioned for the quarter ending June 30, plus 3.0 percent: there is no maximum interest rate on this portion of the loan.

## 180-Day Add-On Provision

If I do not consolidate all eligible loans at this time, I understand that I may later add to this Federal Consolidation Loan an eligible loan(s) made before or after the date of this consolidation. To add an eligible loan(s), I understand I must complete a Request to Add Loans form which is available from the lender and which must be received by the lender within 180 days after the date this Federal Consolidation Loan is disbursed. If I add a loan during this period, the lender will disclose new terms to me. The new terms and information will supersede the terms and information in any prior disclosure. After the 180-day period, no loan can be added to this Federal Consolidation Loan and I will need to apply for a new Federal Consolidation Loan to consolidate any eligible loan(s).

## Late Charges and Collection Costs

The lender may collect from me: **(i)** a late charge for each late installment payment if I fail to make any part of a required installment payment within 15 days after it becomes due, and **(ii)** any other charges and fees that are permitted by the Act for the collection of my loans. If I default on the loan, I will pay reasonable collection fees and costs, plus court costs and attorney's fees.

## Repayment

I must repay the full amount of the loan made under this Note and the accrued interest. Repayment begins upon disbursement of the loan, and my first payment will be due within 60 days after the disbursement.

Payments will be scheduled in monthly installments according to the disclosure my lender will provide to me. The disclosure will state my payment amounts and due dates. The maximum scheduled repayment period may be up to 30 years in length, depending upon the amount of my student loans and my repayment plan. The minimum payment on my loan must equal at least the amount of interest that accrues between scheduled payments.

Payments submitted by me or on my behalf (exclusive of refunds) may be applied first to late charges and collection costs that are due, then to accrued interest that has not been capitalized, and finally to the principal amount. If I am unable to make my scheduled loan payments, the lender may allow me to reduce my payment amount, extend the time for making payments, or temporarily stop making payments as long as I intend to repay my loan. Allowing me to temporarily delay or reduce my loan payment is called forbearance. The lender may grant me a forbearance to align payment due dates on my loans or to eliminate a delinquency that persists even though I am making scheduled payments.

I may prepay all or any part of the unpaid balance on my loan at any time without penalty. Upon payment in full of this Note, I agree to accept written notification of the payoff in place of receiving the original Note.

## Acceleration and Default

At the option of the lender, the entire unpaid balance will become immediately due and payable when either of the following events occurs: **(i)** I make a false representation that results in my receiving a loan for which I am not eligible; or **(ii)** I default on the loan.

The following events shall constitute a default on my loan: **(i)** I fail to pay the entire unpaid balance after the lender has exercised its option under item (i) in the preceding paragraph, **(ii)** I fail to make installment payments when due and my failure persists for at least 270 days, or **(iii)** I fail to comply with other terms of the loan, and the lender or guarantor reasonably concludes I no longer intend to honor my repayment obligation. If I default, the guarantor may purchase my loan and capitalize all outstanding interest into a new principal balance. The new principal balance and collection fees will become immediately due and payable.

If I default, the default will be reported to all national credit bureaus and will significantly and adversely affect my credit history. I acknowledge that a default will have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities Statement. Following default, the loan may be subject to income-contingent repayment (including potential collection of amounts in excess of the principal and interest) in accordance with the Act.

## Governing Law and Notices

The terms of this Note will be interpreted according to the Act, other applicable federal statutes and regulations, and the guarantor's policies. Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this Note.

If I reside in the state where the guarantor's principal office is located, the guarantor may sue to enforce the loan in the county where the guarantor's office is located. However, if I object to being sued there and I mail a written objection to the guarantor that is postmarked no later than 30 days after I am served with the lawsuit, the guarantor will either have the court transfer the lawsuit to the county where I live or will dismiss the lawsuit.

Any notice required to be given to me will be effective if sent by first class mail to the latest address the lender has for me or by electronic means to an address that I have provided. I will immediately notify the lender of any change of address or status as specified in the Borrower's Rights and Responsibilities Statement. Failure by the lender to enforce or insist on compliance with any term of this Note shall not waive any right of the lender. No provision of this Note may be modified or waived except in writing by the lender of the Note. If any provision of this Note is determined to be unenforceable, the remaining provisions remain in force.

**Exhibit B  04**

| | WEB |
|---|---|
| **Federal Family Education Loan Program (FFELP)** | Guarantor, Program, or Lender Identification |
| **Instructions for Completing the Federal Consolidation Loan Application and Promissory Note** | ▇▇▇▇▇▇ 12301804 |
| | 10/02/2007 |

## Before You Begin

Before beginning, gather all of your education loan records, account statements, and bills so that you have the information you need to complete the Federal Consolidation Loan Application and Promissory Note.

Print using a dark ink ballpoint pen or type. Enter dates as month-day-year (mm-dd-yyyy). Use only numbers. Example: June 24, 1982 = 06-24-1982. This form must be signed and dated by the applicant. If an item has been completed for you and is incorrect, cross out the incorrect information and print the correct information. Incorrect or incomplete information may delay processing of your application.

If you have any questions about completing this application, contact the entity identified above.

## Section A. Borrower Information

**Item 1:** Enter or correct your last name, first name, and middle initial.

**Item 2:** Enter or correct your Social Security Number.

**Item 3:** Enter your permanent address (number, street, apartment number, or rural route number and box number, then city, state, zip code). If your mailing address is a post office box or general delivery, you must list your mailing address in 3B, in addition to your home address in 3A.

**Item 4:** Enter the area code and telephone number at which you can most easily be reached. (Do not list your work telephone number here.) If you do not have a telephone, enter N/A.

**Item 5:** Enter any former names under which one or more of your loans may have been disbursed. If you do not have a former name, enter N/A.

**Item 6:** Enter the date of your birth. Be careful not to enter the current year.

**Item 7:** Enter the two-letter abbreviation for the state that issued your driver's license followed by the driver's license number. If you do not have a driver's license, enter N/A.

**Item 8:** Enter your preferred e-mail address for receiving communications. You are not required to provide this information. If you do, the lender or holder of your loan may use your e-mail address to communicate with you. If you do not have an e-mail address, or do not wish to provide it, enter N/A.

**Item 9:** *It is important that the consolidating lender is able to reach you during the process of making your loan and during repayment.* Enter your employer's name, address (including number, street, suite number, city, state, and zip code), and your work telephone number (or the number of your work cellular telephone or other wireless device). If you are self-employed, enter the name, address, and telephone number of your business (or the number of your business cellular telephone or other wireless device). If you are not employed, enter N/A.

**Item 10:** Enter the name of the lender you would like to finance your Federal Consolidation Loan.

**Item 11:** Enter the lender code, if known. Otherwise, leave this item blank.

## Section B. Reference Information

**Items 12A and 12B:** Enter the requested reference information for two adults with different addresses who have known you for at least three years. References with addresses outside the United States are not acceptable. Do not include individuals who live with you. If a reference does not have a telephone number or e-mail address or does not wish to provide an e-mail address, enter N/A. If you provide an e-mail address for a reference, the lender or holder of your loan may use it to communicate with the reference. All requested items must be completed or processing of your application will be delayed.

## Section C. Promissory Note

This is a legally binding contract.

**Item 13:** Carefully read the entire Promissory Note, Borrower Certification and Authorization, Borrower's Rights and Responsibilities Statement, and the other materials provided in connection with this loan.

**Item 14:** Sign and date the Promissory Note.

**Note:** Signature is required. If you fail to sign the Promissory Note, your application will be delayed.

## Section D. Education Loan Indebtedness

**Education Loans**

The following types of education loans (except those represented by the code OTHER) are eligible for consolidation:

| Loan Code | Education Loans |
|---|---|
| SS | Subsidized Federal Stafford Loans |
| DSS | Direct Subsidized Stafford/Ford Loans |
| US | Unsubsidized and Nonsubsidized Federal Stafford Loans |
| DUS | Direct Unsubsidized Stafford/Ford Loans |
| PLUS | Federal PLUS Loans (for parents) |
| GB | Federal PLUS Loans (for graduate/professional students) |
| DPLUS | Direct PLUS Loans (for parents) |
| D3 | Direct PLUS Loans (for graduate/professional students) |
| SLS | Federal Supplemental Loans for Students |
| PERK | Federal Perkins Loans and National Direct Student Loans |
| SCON | Subsidized Federal Consolidation Loans |
| DSCON | Direct Subsidized Consolidation Loans |
| UCON | Unsubsidized Federal Consolidation Loans |
| DUCON | Direct Unsubsidized Consolidation Loans, including Direct PLUS Consolidation Loans |
| HPSL | Health Professions Student Loans, including Loans for Disadvantaged Students |
| HEAL | Health Education Assistance Loans |
| FISL | Federal Insured Student Loans |
| NSL | Federal Nursing Loans |
| OTHER | Other education loans not eligible for consolidation that you want used to calculate the maximum repayment period |

Information you need to answer items in this section is available in loan documents, such as:

- The last monthly billing statement you received,
- Your quarterly interest statement or annual statement,
- Your coupon book, or
- The Internet site of your loan holder or servicer.

If you are unsure of the correct information on your loans, contact the entity to which you send your payments or check the most recent correspondence from that entity. You may also obtain information on your loan(s) by accessing the National Student Loan Data System at http://www.nslds.ed.gov.

**Step 1:** Begin by listing (according to the instructions that follow for Items 15-19) eligible loan(s) that you wish to consolidate, including any loan(s) currently held by the lender that will be consolidating your loan(s). You may consolidate a Federal Consolidation Loan only if you are combining that loan with at least one other eligible loan.

If you are in default on any loan that you wish to consolidate, you must have made satisfactory repayment arrangements with the holder to repay the loan before it is eligible for consolidation. Satisfactory arrangements usually involve making a series of payments on the defaulted loan. For Federal Stafford, Federal SLS, Federal PLUS, or Federal Consolidation loans, satisfactory repayment arrangements involve making a series of reasonable and affordable payments or agreeing to repay the new Federal Consolidation Loan under an income-sensitive repayment plan. Contact the holder of your defaulted loan for specific information.

**Item 15:** Enter the code that corresponds to the loan type from the Education Loans list. If you are not sure about the loan type, leave this item blank.

**Item 16:** Enter the full name and mailing address of the holder of each of your federal education loans or the holder's servicer. (This is the address to which you are or will be sending your payments.) Do not use initials instead of full names. For a defaulted FFELP loan, the holder is the guaranty agency or the Department of Education. For a defaulted Federal Direct loan, the holder is the Department of Education. For a Perkins Loan, the holder is the school.

**Item 17:** Enter the account number for each loan. This may be listed on your monthly billing statement or coupon or in other information your holder or holder's servicer provides.

**Item 18:** Enter the interest rate you are paying on each loan.

**Item 19:** Enter the estimated payoff amount, including any unpaid interest, late fees, and collection costs.

**Exhibit B_05**
*Continued on next page.*

**Item 20:** If you are in your grace period (the specified period of time after a student graduates, leaves school, or drops to less than half-time enrollment during which loan payments are not required and during which interest on loans may be payable by the federal government) for any of the loans selected for consolidation and you wish to delay processing until you have completed your grace period, enter the month and year that your grace period ends. If you request such a delay, processing of your Federal Consolidation Loan will begin approximately 60-90 days before the latest grace period end date. If you leave this field blank, the processing of your Federal Consolidation Loan will not be delayed and any selected loans that are in a grace period will enter repayment immediately upon consolidation.

**Step 2:** The maximum length of your Federal Consolidation Loan repayment period is determined by your total education loan debt, including:

- Loans you are consolidating,
- Loans eligible for consolidation that you are not consolidating, and
- Loans not eligible for consolidation.

In **Items 21-25**, list eligible loans you do not wish to consolidate and outstanding education loans not eligible for consolidation that you want used to determine your maximum repayment period. Outstanding education loans not eligible for consolidation must have been made exclusively to finance postsecondary education by an entity such as a bank, school, or state agency under a public or private loan program. Personal loans from family or friends or loans in default may not be listed. The amount of the loans that are not included in the Federal Consolidation Loan but are used to determine your repayment period will not exceed the amount of the loans consolidated.

### Section E. Repayment Plan Selection

**Item 26:** You may choose one of several repayment plans for your Federal Consolidation Loan. (Refer to supplemental materials provided by the consolidating lender or call the lender for more information on repayment options.) If you do not complete this item, the lender will provide a standard payment schedule that does not exceed the maximum allowable repayment period for which you are eligible. The maximum repayment period is 10 to 30 years depending on the amount of your student loans listed in Sections D.1 and D.2. Your maximum repayment period will be based on your student loan debt; however, you may request a repayment period that is shorter than the maximum period allowed. A shorter repayment period will reduce the amount of interest you will pay over the life of the loan.

Your repayment plan options include:

**A. Standard Payments** in which you will make equal monthly payments. The final payment may be slightly larger or smaller.

**B. Graduated Payments** in which your monthly payments will be smaller in the beginning of repayment and gradually increase in stages over the course of the repayment period.

**C. Income-sensitive Payments** in which the amount of your monthly payments will be adjusted annually based on your expected total monthly gross income from employment and all other sources. Payments may increase or decrease. If you select this option, your initial repayment amount will be based on a standard or graduated payment plan unless otherwise specified in accompanying materials. After your Federal Consolidation Loan is made, you will be required to submit additional information to assist the lender in determining your income-sensitive payment.

**D. Extended Payments** in which you may repay over a 25-year period on a standard or graduated payment plan if you have FFELP loans totalling more than $30,000. Under the other repayment options available in the consolidation program, you must have at least $40,000 in debt to qualify for a 25-year repayment period. If you have debt in excess of $60,000 and wish to repay over a 30-year period, you should select one of the other repayment options (A-C).

**Note:** You may apply for a Federal Consolidation Loan from any FFELP lender. Alternatively, if you are eligible for a FFELP consolidation loan and you are unable to obtain a Federal Consolidation Loan or a Federal Consolidation Loan with income-sensitive repayment terms that are acceptable to you, you may apply for a Federal Direct Consolidation Loan from the U.S. Department of Education. In addition, if you have a Federal Consolidation Loan that has become seriously delinquent or that has defaulted, you may be eligible to consolidate that loan into a Federal Direct Consolidation Loan for the purpose of obtaining an income-contingent repayment plan.

### Section F. Borrower Certification and Authorization

**Items 27 and 28:** Read these items carefully. The statements confirm the accuracy of information that you supply, authorize various parties to perform certain functions, and certify your understanding and acceptance of certain terms and conditions of the loan.

### Submitting Your Application and Promissory Note

Review all information on your Federal Consolidation Loan Application and Promissory Note. Return pages 1 through 3 of your completed application and promissory note to your consolidating lender for processing. **Keep a copy for your records. Remember to continue making your regularly scheduled education loan payments until your consolidating lender notifies you that the consolidation is complete**. If you would like to temporarily postpone your payments while your Federal Consolidation Loan is being processed, contact your holder(s) regarding forbearance.  When your loans are consolidated, you will receive a repayment schedule and disclosure statement for your Federal Consolidation Loan. It will provide information about your new loan and instructions on where to send your monthly payments.

**Mailing Instructions:** Mail the original copy of the Federal Consolidation Loan Application and Promissory Note and the Additional Loan Listing Sheet, if applicable, to your consolidating lender.

**Exhibit B  06**

# Borrower's Rights and Responsibilities Statement

**Important Notice:** The Borrower's Rights and Responsibilities Statement provides additional information about the terms and conditions of your Federal Consolidation Loan. Please retain this Statement for your records. You may contact your lender at any time for another copy of this Statement.

The Federal Family Education Loan Program (FFELP) includes the following loans:

■ Subsidized Federal Stafford Loan,
■ Unsubsidized Federal Stafford Loan,
■ Federal Insured Student Loan (FISL),
■ Federal Supplemental Loans for Students (SLS),
■ Federal PLUS Loan, and
■ Federal Consolidation Loan.

The FFELP is authorized by Title IV, Part B of the Higher Education Act of 1965 as amended.

. **Governing Law** – A loan disbursed under this Federal Consolidation Loan Promissory Note (Note) is subject to the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), and applicable U.S. Department of Education regulations (collectively referred to as the "Act").

. **Change of Status** – I must notify my lender or any subsequent holder of my loan if any of the following events occurs:

■ I change my address, e-mail address, or telephone number,
■ I change my name (for example, maiden name to married name),
■ I change my employer or my employer's address or telephone number changes, or
■ I have any other change in status that would affect my loan (for example, the loss of eligibility for an unemployment deferment by obtaining a job).

. **Interest Rate** – The interest rate on a Federal Consolidation Loan is based on the weighted average of the interest rates on the loans being consolidated rounded up to the nearest higher one-eighth of one percent, not to exceed 8.25%. This fixed interest rate remains the same throughout the life of the loan. For the portion of a Federal Consolidation Loan attributable to a HEAL loan, the interest rate is a variable rate, adjusted annually on July 1. The variable rate is equal to the average of the bond equivalent rates of the 91-day Treasury Bills auctioned for the quarter ending June 30, plus 3.0%; there is no maximum interest rate on this portion of the loan. The interest rate of my Federal Consolidation Loan will be disclosed to me at or about the time my loan is disbursed.

. **Payment of Interest** – It is my responsibility to pay interest on the unpaid principal amount of my loan. Interest will be charged from the date my Federal Consolidation Loan is disbursed. The federal government will pay interest that accrues during deferment on the portion of my Federal Consolidation Loan that repays subsidized Federal Stafford Loans, subsidized Federal Direct Stafford Loans, subsidized FISL loans, subsidized Federal Consolidation Loans, and subsidized Federal Direct Consolidation Loans. I will be responsible for interest that accrues during deferment on the portion of my Federal Consolidation Loan that repays other loan types.

I am responsible for paying the interest that accrues during a forbearance period.

I inform my lender that I wish to pay interest as it accrues, but I do not make any payments, my lender may capitalize that interest. Capitalized interest increases the principal balance of my loan and the total amount of interest charges I must pay.

Interest on my loan may be capitalized to the extent permitted by the Act. Generally, capitalization may occur no more frequently than quarterly.

I may be able to claim a federal income tax deduction for interest payments I make on my FFELP loans. For further information, I may refer to the IRS Publication 970 available at http://www.irs.gov.

. **Sale or Transfer of Loan** – The lender may sell or otherwise transfer my loan without my consent. Should ownership of my loan be transferred, I will be notified of the name, address, and telephone number of the new lender if the address to which I must make payments changes. Sale or transfer of my loan does not affect my rights and responsibilities under the loan.

. **Consequences of Default** – Default is defined in detail in my Note. If I default, the entire unpaid balance and collection fees will become immediately due and payable. Failure to repay this loan according to its terms and conditions may result in any or all of the following:

■ Loss of federal and state income tax refunds,
■ Loss of other federal or state payments,
■ My employer withholding part of my wages to give them to my guarantor (administrative wage garnishment),
■ Legal action against me,
■ Collection charges (including attorney's fees) being assessed against me,
■ Loss of my professional license,

■ An increase in my interest rate,
■ Loss of eligibility for other student aid and assistance under most federal benefit programs,
■ Loss of eligibility for loan deferments, and
■ Negative credit reports to credit bureaus.

NOTE: To avoid the consequences of default, I may be eligible to consolidate a Federal Consolidation Loan that has become seriously delinquent or that has defaulted through the U.S. Department of Education's Federal Direct Consolidation Loan Program for the purpose of obtaining an income-contingent repayment plan.

**7. Credit Bureau Notification** – Information concerning the amount, disbursement, and repayment status (current or delinquent) of my loan will be reported by my lender to one or more national credit bureaus on a regular basis. If I default on my loan, the default will also be reported by the guarantor to all national credit bureaus. Before the guarantor reports such a default, it will give me at least 30 days notice that default information will be disclosed to the credit bureaus unless I enter into a repayment arrangement within 30 days of the date of the notice. The guarantor will give me a chance to ask for a review of the debt before the default is reported. My lender or guarantor, as applicable, must provide a timely response to a request from any credit organization regarding objections I might raise with that organization about the accuracy and completeness of information reported by the lender or guarantor.

**8. Loan Discharge & Forgiveness** – My loan will be discharged if documentation of my death is submitted to my lender. If I am consolidating a PLUS Loan and the dependent student for whom I borrowed the PLUS Loan dies, the portion of my Federal Consolidation Loan attributable to that PLUS Loan will be discharged if documentation of the dependent student's death is submitted to my lender.

My loan may also be discharged if a physician certifies that I am totally and permanently disabled as defined by the Act. In addition, I must meet certain employment earnings requirements and may not receive any additional FFELP, Direct, or Federal Perkins loans during a 3-year conditional discharge period. I may not receive a discharge due to total and permanent disability based on a condition that existed before I applied for the loans that are being consolidated unless a physician certifies that the condition substantially deteriorated after the loans that are being consolidated were made.

I understand that I may not qualify for a disability discharge of my Federal Consolidation Loan if any loan I am consolidating does not meet the discharge conditions.

My loan will not be automatically discharged in bankruptcy. To discharge a loan in bankruptcy, I must prove undue hardship in an adversary proceeding before the bankruptcy court.

In certain cases, the Act provides discharge of all or a portion of my Federal Consolidation Loan if:

■ One or more FFELP, Direct, or Federal Perkins loans that I consolidated were used to pay for a course of study that I was unable to complete because my school closed, or
■ My eligibility for one or more FFELP or Direct loans that were consolidated was (i) falsely certified by my school or (ii) falsely certified as a result of a crime of identity theft.

The Act also provides for discharge in the amount of any required refund of a FFELP or Direct loan that my school failed to make to my loan holder on my behalf.

Neither the lender, the guarantor, nor the Department of Education vouch for the quality or suitability of the academic programs offered by participating schools. Unless I qualify for loan discharge under the Act, I must repay this loan even if I do not complete my education, I am unable to obtain employment in my field of study, or I am dissatisfied with, or do not receive, the education I paid for with the loan(s) being consolidated.

If I am a full-time teacher and at the time I obtained a subsidized or unsubsidized Stafford Loan that I am consolidating I had no outstanding balance on a Title IV loan disbursed before October 1, 1998, I may be eligible for forgiveness under the Teacher Loan Forgiveness Program. A fixed amount of my Stafford loan(s) that I am consolidating may be repaid if I have worked as a full-time teacher for five consecutive school years and if I meet all other eligibility requirements under the Act.

I understand that, by consolidating, I may forego some discharges that might otherwise be available for the loan(s) being consolidated.

**9. Deferment** – Under certain circumstances, I have a right to defer (postpone) repayment. Upon request, my lender will provide me with a deferment application that explains the eligibility requirements. If I am in default on my Federal Consolidation Loan, I am not eligible for deferment unless I make payment arrangements satisfactory to the holder before payment of a default claim on the loan.

**Exhibit B-07**

**NO ADDITIONAL PAGES PROVIDED TO PLAINTIFF**

Exhibit B  08

SallieMae Servicing
PO Box 9500
Wilkes-Barre, PA 18773-9500



www.salliemae.com

GWENDOLYN J SIMPSON

October 8, 2007



LOAN CONSOLIDATION DISCLOSURE STATEMENT AND REPAYMENT SCHEDULE

Consolidation Application ID: 12301804

This statement provides the terms and conditions for repayment of the consolidation loan between you and the consolidating lender listed. The repayment schedule established is based upon information in our records and the terms of the Consolidation Promissory Note you signed. You should check this information thoroughly and notify SallieMae Servicing immediately of any discrepancies with your records. The guarantor of your consolidation loan is CALIFORNIA STUDENT AID COMMISSION and your consolidating lender is SLM EDUCATION LOAN CORP.

| REPAYMENT SCHEDULE | | | | |
|---|---|---|---|---|
| **DATE** | **INTEREST RATE** | **AMOUNT FINANCED** | **FINANCE CHARGES** | **TOTAL OF PAYMENTS** |
| Date Interest Begins to Accrue. | Annual Interest Rate of Your Loan(s). | Unpaid Principal (Including Capitalized Interest of Your Loan). | Dollar Amount the Credit Will Cost You.* | Principal and Interest You Will Have Paid After All Payments Are Made as Scheduled. |
| 10/10/2007 | 4.875% | $72,209.07 | $68,639.57 | $140,848.64 |

* Indicates an estimate of the total finance charge--the actual finance charge will depend upon the timely payment of amounts owed and the use of deferment and/or forbearance provisions of the Federal Loan Consolidation Program.

Repayment of the loan will be in monthly installments, on the same day of each month, according to the following schedule:

| | | |
|---|---|---|
| 36 | $301.26 | 12/09/2007 |
| 323 | $401.22 | 12/09/2010 |
| 1 | $409.22 | 11/09/2037 |

### ITEMIZATION OF LOANS CONSOLIDATED

| Name of Former Creditor/Servicer | Funds Paid | Loan Subsidy |
|---|---|---|
| SALLIE MAE TRUST | $8,420.72 | SUBSIDIZED |
| MUSTANG FUNDING | $8,500.00 | SUBSIDIZED |
| MUSTANG FUNDING | $8,500.00 | SUBSIDIZED |
| MUSTANG FUNDING | $8,218.12 | UNSUBSIDIZED |
| MUSTANG FUNDING | $10,639.19 | UNSUBSIDIZED |
| SALLIE MAE TRUST | $27,931.04 | UNSUBSIDIZED |
| TOTAL AMOUNT | $72,209.07 | |

**Exhibit C  01**

SallieMae Servicing is a servicer for lenders participating in the Federal Family Education Loan Program and other student loan programs. Our job is to service your loan(s) - post your payment(s), update your account, and answer questions. If you have any questions about your loan(s), please ask us. You can write to SallieMae at the address below or call (888) 272-5543, 24 hours a day, 7 days a week. Online access to forms and account information is available at "Manage Your Loans". Simply log on to www.salliemae.com, click "Enroll Now!" and follow the instructions to establish on-line access to your account.

| **For Remitting Payments** | **For Forms and Correspondence** |
|---|---|
| SallieMae Servicing | SallieMae Servicing |
| PO Box 9532 | PO Box 9500 |
| Wilkes-Barre, PA 18773-9532 | Wilkes-Barre, PA 18773-9500 |

SallieMae will send you payment information shortly, in the form of either monthly bills or payment coupons. For monthly bills, simply detach the invoice portion and mail it with your payment to the address indicated on the invoice. Coupon books include mailing labels with the payment address.

AMOUNT FINANCED: Total loan amount represents the total principal amount of your consolidation loan.

TOTAL OF PAYMENTS: Total of payments is based upon the assumption that all payments will be made on the scheduled due dates. Accordingly, if payments are made earlier than scheduled, less interest will be paid than is contemplated by the schedule. If payments are made late, additional interest will accrue beyond the scheduled payment due date. The amount of the final payment will be adjusted upward or downward to reflect the balance due based upon the actual payment dates.

EXPLANATION OF FEES: If a payment is late by more than 15 days, you may be subject to a late charge not to exceed 6% of the payment. In addition, you will be liable for all collection costs including, but not limited to, returned payment charges, reasonable attorney's fees, court costs, and collection agency fees incurred that are necessary for the collection of payment not made when due.

INTEREST RATE: For the portion of your consolidation loan comprising Subsidized and Unsubsidized loans, the interest rate is a fixed rate calculated as the weighted average of your underlying loans (excluding HEAL), rounded up to the nearest one-eighth percent, not to exceed 8.25%.

For the portion of your consolidation loan comprising HEAL loans, your interest rate is a variable rate and will change annually on July 1. This interest rate is based on the average of the 91-day Treasury Bills auctioned for the quarter ending prior to July 1 plus 3.0%, but is not subject to a maximum interest rate.

(The loans that have been consolidated are listed under the heading of Itemization of Loans Consolidated. This list categorizes loans according to their eligibility for an interest subsidy during a period of deferment--Subsidized or Unsubsidized. Also, any HEAL loans, which are unsubsidized, will be listed separately, because a variable rate applies to any HEAL portion of your consolidation loan, as noted above. The interest rate in the box entitled, Annual Interest Rate of Your Loans, is the rate that applies to the non-HEAL portion of your consolidation; this is the rate that will be charged against the loans listed as Subsidized and Unsubsidized.)

INTEREST DURING DEFERMENT/FORBEARANCE PERIODS: A deferment or forbearance allows you to temporarily postpone repayment of your loan. Depending on the types of loans you have consolidated, the federal government may pay the interest on all or a portion of your loan during deferment periods. Interest not paid by the federal government during deferment and all interest during a forbearance will continue to accrue. If you do not pay this interest, it may be capitalized (added to the principal amount of the loan(s)) no more frequently than quarterly.

EXTENDED REPAYMENT OPTION: If you are a borrower with your first loan disbursed on or after 10/07/1998 and have a total outstanding principal and interest balance in excess of $30,000.00, you may qualify for an extended repayment plan not to exceed 25 years.

<b>NOTICE TO BORROWER</b>

The reverse side of this form contains the disclosure statement and repayment schedule for your consolidation loan.

We want you to be aware of your rights and responsibilities relating to this loan. These were previously described for you in the Promissory Note you signed and in the materials you received with your application. If you need an additional copy of this promissory note, please contact us at the above address.

Please remember that this loan is your debt and must be repaid. You may be eligible to defer repayment of your loan under certain circumstances as described to you in materials you have previously received. You may prepay your loan at any time without penalty. You must keep us or your Lender informed of changes in your name and/or address.

As a reminder, failure to repay your loan according to its terms and conditions will result in reporting your default to a credit bureau and may result in any or all of the following:

* Loss of Federal and/or State income tax refunds       * Legal Action
* Loss of eligibility for federal student aid           * Difficulty in obtaining other credit
* Wage Garnishment

We wish you success as we continue to be of service to you throughout the life of this loan. If you have any questions, please contact us at the above address.

<b>Exhibit C  02</b>



P.O. BOX 9500
WILKES-BARRE PA 18773-9500

(888) 272-5543

GWENDOLYN J SIMPSON

Account Number: ▉▉▉7096-1

Dear GWENDOLYN J SIMPSON:                                    11/29/13

Thanks for letting us take care of your student loan account and invest
in your potential. Recently, the payment terms on your loan(s) listed
below have changed.

This updated payment schedule replaces all previous payment schedules
for your loan(s); however, the terms of your original Promissory Note(s)
still apply.

| No. of Payments | Payment Amount | Due Date |
|---|---|---|
| 345 | 153.83 | 02/09/14 |
| 1 | 133.80 | 11/09/42 |

| | | |
|---|---|---|
| Unpaid Principal Balance: | $ | 27,868.08 |
| Accrued Interest to Be Capitalized: | $ | 702.82 |
| Outstanding Late Fees: | $ | 0.00 |
| Estimated Amount of Interest to Be Paid During Repayment: | $ | 24,634.25 |
| Estimated Total Amount to Be Paid: | $ | 53,205.15 |

It's important to know that the payment terms usually change for one of
the following reasons:

o The deferment or forbearance period used to postpone your monthly
  payments is about to end,
o You requested a different monthly payment amount,
o Your repayment plan has changed,
o Your school separation date was updated to an earlier date than
  previously reported,
o Your interest rate has changed,
o Unpaid unsubsidized interest has been capitalized, or
o One or more of your loans has recently been paid in full and your
  account is paid ahead.

## Loan Information  *If you have questions or concerns about your account, write to us at the address provided above.*
The loans listed below are the loans referred to in this letter.

| LOAN DATE | ORIGINAL LOAN AMOUNT | OUTSTANDING PRINCIPAL | INTEREST RATE | LOAN PROGRAM |
|---|---|---|---|---|
| * 10/10/07 | $ 46,788.35 | $ 27,868.08 | 4.875 | SM |

PHONE (888) 272-5543  •  FAX (800) 848-1949  •  TDD/TTY (888) 833-7562      SallieMae.com

Para comunicarse en Español con 'Atención al Cliente',
llame gratis al 1-888-272-5543, y marque el número correspondiente.

**Exhibit D  01**

H204     E63169        3577                    LWL31

9718267096258394999

Account Number: **9718267096-1**

Page 2                                                                11/29/13

**Enrolled in automatic debit?**
Beginning next month, we'll debit the designated bank account with the
new payment amount shown in the payment schedule above.

**Using a coupon or billing statement to make your payments?**
Keep an eye out for the updated coupons or statements reflecting your
new payment schedule.

**Needing to postpone your payments?**
There are two options that may be available for your Federal Family
Education Loan Program (FFELP) Loans: deferment or forbearance.

For either option, interest will continue to accrue and in some cases,
you'll be responsible for that interest. We encourage you to pay it as
it accrues to avoid capitalization (interest added to the principal
balance of each loan). If your interest is capitalized, more interest
may accrue over the life of the loan(s), your monthly payments may be
higher and more payments may be required to satisfy the balance. For
more information on these options, log in to your account at
SallieMae.com and click on the Change Your Payment tab.

**Questions?** You're welcome to visit us online at SallieMae.com, or call
us toll free at 888-2-SALLIE (888-272-5543). We're here to help you
Monday - Thursday 8 a.m. to 9 p.m., and Friday 8 a.m. to 8 p.m., ET.

As your saving, planning, and paying for education partner, we
appreciate the opportunity to serve you.

Sincerely,
Sallie Mae Customer Service

## Loan Information
The loans listed below are the loans referred to in this letter.

| LOAN DATE | ORIGINAL LOAN AMOUNT | OUTSTANDING PRINCIPAL | INTEREST RATE | LOAN PROGRAM |
|-----------|----------------------|-----------------------|---------------|--------------|
|           | $                    | $                     |               |              |

**Exhibit D  02**

H204     E63169    3577                              LWL32

# NAVIENT.

P.O. BOX 9500
WILKES-BARRE, PA 18773-9500

(888) 272-5543

GWENDOLYN J SIMPSON
███ ██ ███
██ ███ ██ ███

Account Number:       ███7096-1

Dear GWENDOLYN J SIMPSON:                                                                02/07/16

### Your terms have changed

This updated payment schedule replaces all previous payment schedules for your loan(s); **however, the terms of your original Promissory Note(s) still apply.**

| No. of Payments | Payment Amount | Due Date |
|---|---|---|
| 329 | $285.13 | 03/25/16 |
| 1 | $316.86 | 08/25/43 |

| | |
|---|---|
| Unpaid Principal Balance: | $51,439.10 |
| Accrued Interest to Be Capitalized: | $535.87 |
| Outstanding Late Fees: | $0.00 |
| Estimated Amount of Interest to Be Paid During Repayment: | $42,149.66 |
| Estimated Total Amount to Be Paid: | $94,124.63 |

*Why do terms change?*
Payment terms usually change for one of the following reasons:

- The deferment or forbearance period used to postpone your monthly payments is about to end,
- You requested a different monthly payment amount,
- Your repayment plan has changed,
- Your school separation date was updated to an earlier date than previously reported,
- Your interest rate has changed,
- Unpaid unsubsidized interest has been capitalized, or
- One or more of your loans has recently been paid in full and your account is paid ahead.

*How does this impact my payments?*
*If you're in Auto Pay:* Beginning next month, we'll debit the designated bank account with the new payment amount shown in the payment schedule above.

*If you're using a Coupon Book or Billing Statement:* Keep an eye out for the updated coupons or statements reflecting your new payment schedule.

***If you're having difficulty making payments we're here to help***
We know financial challenges can come up unexpectedly, and we want to help you stay on track with your repayment schedule. Making payments on time is always the best way to protect your credit score and avoid late fees. If you're having difficulty making the current payment(s) and you can't make a payment now, you can find more information by logging into your online account at Navient.com.

*Keep in mind:*

---

| PHONE (888) 272-5543 | FAX (800) 848-1949 | TDD/TTY (888) 833-7562 | Navient.com |

Para comunicarse en Español con 'Atención al Cliente',
llame gratis al (888) 272-5543, y marque el numero correspondiente.

*9718267096115¹      **Exhibit E  01**



| H204 | SYSTEM | S | 0001 |

- Since interest accrues in some cases, we encourage you to pay that interest, if you can, to avoid capitalization (interest added to the principal balance of each loan).
- If your interest is capitalized, more interest may accrue over the life of the loan(s), your monthly payments may be higher and more payments may be required to satisfy the balance.

**Questions?** You're welcome to visit us online at Navient.com, or call us toll free at 888-272-5543. We're here to help you Monday - Thursday 8 a.m. to 9 p.m., and Friday from 8 a.m. to 8 p.m., ET.

We appreciate the opportunity to help you navigate the path to financial success.

Sincerely,

Navient Customer Service

**Loan Information**
The loans listed below are the loans referred to in this letter. *If you have questions or concerns about your account, write to us at the address provided above.*

| LOAN DATE | ORIGINAL LOAN AMOUNT | OUTSTANDING PRINCIPAL | INTEREST RATE | LOAN PROGRAM |
|---|---|---|---|---|
| * 10/10/07 | $ 46,788.35 | $ 27,450.23 | 4.875 | SM |
| * 10/10/07 | $ 25,420.72 | $ 23,988.87 | 4.875 | SM |

**Exhibit E  02**

# NAVIENT.

Gwendolyn,

Thank you for your inquiry regarding your repayment information, we appreciate you reaching out to us.

Our records indicate you are in Extended Repayment Loan Program - Level/Fixed.  Under this program, your payments are level/fixed for the remaining terms until the loan is paid in full.  You began this program February 7, 2016.

Your payment schedule in the amount of $285.13 for 251 months through July 25, 2043, $316.86 August 25, 2043.  You may leave/change plans at any time for another eligible plan.

If we can provide additional assistance, visit our website at Navient.com. You are also welcome to call us at 888-272-5543. We are here to help you Monday through Thursday, 8:00 a.m. to 9:00 p.m., and Friday 8:00 a.m. to 8:00 p.m., ET.

Best Regards,

Jennifer, Loan Servicing Specialist
ref:_00D6g24VAq._5008y579KV:ref

---------- Original Message ----------

Good afternoon,  I enrolled in Extended Repayment years ago and have been making payments in this repayment plan for as long as I can remember on the two active consolidation loans.  Today, I reviewed the status, and it appears that I am not in Extended Repayment and the repayment period exceeds the maximum repayment term!  Please advise what type of repayment plans my loans are in and when the repayment plan was entered into.  Thank you.

**Exhibit F  01**

NAVIENT.

P.O. BOX 9500
WILKES-BARRE, PA 18773-9500

GWENDOLYN J SIMPSON


# GWENDOLYN, we've updated the payment schedule of your loans.

To see what loans were included in this update, refer to the loan table at the end of this letter.

*Your updated loan information:*

| | |
|---|---|
| Previous Principal (includes previously Capitalized Interest but not the Capitalized Interest indicated below) | $42,408.10 |
| Capitalized Interest (Accrued Unpaid Interest added to principal with this statement) (See important disclosure section.) | + $0.00 |
| Unpaid Principal | = $42,408.10 |
| Accrued Unpaid Interest (not capitalized) | + $5.37 |
| Balance Used to Calculate Monthly Payment Amount | = $42,413.47 |
| Estimated Total Amount of Future Interest to be Paid During Repayment (if payments are made as scheduled) | + $38,685.13 |
| Estimated Total Loan Amount to be Paid | = $81,098.60 |

| | |
|---|---|
| Late Fees (must be paid in addition to the Monthly Payment Amount) | $0.00 |

*This may not reflect your entire repayment schedule. To view a complete repayment schedule, log in to your Navient.com account.*

If you make all remaining payments on time according to this schedule, we estimate that your loans will be paid off in 08/2054.

*Your updated payment schedule:*

| Number of Payments | Payment Amount ($) | Due Date |
|---|---|---|
| 382 | 212.30 | 11/25/22 |

**Account number**
7096 - 1

**Date**
10/26/22

**Manage your account online**
Navient.com

**Payment address**
P.O. Box 9533
Wilkes-Barre, PA 18773-9533

**Phone number**
888-272-5543

Monday – Thursday,
8 a.m. – 9 p.m.
Friday, 8 a.m. – 8 p.m. Eastern

Remember, the more you can pay each month, the less you'll pay in interest over the life of your loan(s).

Para comunicarse en Español con 'Atención al Cliente', llame gratis al (888) 272-5543, y marque el numero correspondiente.

**Exhibit G  01**
*971826709612551419B*

This repayment schedule replaces all previous schedules for the loans and doesn't include any Past Due Amounts. All terms of your original Promissory Notes remain in effect.

**What you need to know**

Interest accrues on your account at a rate set by the terms of your loan. If you depart from your original repayment schedule by taking a forbearance or making late payments, for example, you may accrue additional interest that will need to be paid.

Under the terms of your Promissory Note, we apply your payments to outstanding interest before applying them to principal. So, if you accrue more interest than we originally anticipated in your repayment schedule and if you don't pay that additional interest as it accrues, your Monthly Payment Amount may need to be adjusted to make sure your loan will be paid off by its stated loan term end date.

**We're here to help**

We want to help you manage your account in a way that's convenient for you. Please call us or visit us online.

**Important disclosure(s)**

*Capitalization of interest*

Unpaid Interest may be capitalized (added to your principal balance) at the end of the grace period, at the end of a deferment, at the end of each forbearance, when the loan enters repayment, and upon certain conditions while enrolled in an income-driven repayment (IDR) plan as permitted by law and your loan agreement. For Subsidized Stafford Loans first disbursed prior to July 1, 2000, Unsubsidized Stafford Loans first disbursed prior to October 7, 1998, all PLUS and Consolidation Loans, and some private loans, Unpaid Interest may also be capitalized as often as quarterly during in school, grace, deferment, or forbearance periods. Please see your loan agreement for additional details. Capitalization increases both the principal balance and total loan cost.

*Review of payment schedule*

Periodically, we review accounts and adjust Monthly Payment Amounts to ensure that loans will be paid off within their repayment terms. We will inform you of any such change before the new Monthly Payment Amount is due.

*Credit reporting accuracy*

If you believe the information we are reporting to the consumer reporting agencies is not accurate or is incomplete, or you want to dispute it, please write us. Include your name, address and account number.  Please identify the specific information in question, explain the basis of the dispute, and include all supporting documentation to substantiate the basis of the dispute. Mail your letter to: Navient, P.O. Box 9500 Wilkes-Barre, PA 18773-9500.

**Exhibit G  02**

*Your loan servicer*
Your loans are serviced by Navient Solutions, LLC (NMLS# 212430).

**Loan Information**

| DISBURSEMENT DATE | ORIGINAL PRINCIPAL | UNPAID PRINCIPAL | INTEREST RATE | LOAN PROGRAM |
|---|---|---|---|---|
| 10/10/07 | $ 46,788.35 | $ 22,990.46 | 4.625 | SM |
| 10/10/07 | $ 25,420.72 | $ 19,417.64 | 4.625 | SM |

**Exhibit G  03**

# NAVIENT®

P.O. BOX 9500
WILKES-BARRE, PA 18773-9500



GWENDOLYN J SIMPSON

---

# GWENDOLYN, we've updated the payment schedule of your loans.

To see what loans were included in this update, refer to the loan table at the end of this letter.

*Your updated loan information:*

| | | |
|---|---|---|
| Previous Principal (includes previously Capitalized Interest but not the Capitalized Interest indicated below) | | $18,449.56 |
| Capitalized Interest (Accrued Unpaid Interest added to principal with this statement) (See important disclosure section.) | + | $0.00 |
| Unpaid Principal | = | $18,449.56 |
| Accrued Unpaid Interest (not capitalized) | + | $16.35 |
| Balance Used to Calculate Monthly Payment Amount | = | $18,465.91 |
| Estimated Total Amount of Future Interest to be Paid During Repayment (if payments are made as scheduled) | + | $15,071.54 |
| Estimated Total Loan Amount to be Paid | = | $33,537.45 |

| | | |
|---|---|---|
| Late Fees (must be paid in addition to the Monthly Payment Amount) | | $0.00 |

*This may not reflect your entire repayment schedule. To view a complete repayment schedule, log in to your Navient.com account.*

If you make all remaining payments on time according to this schedule, we estimate that your loans will be paid off in 04/2052.

*Your updated payment schedule:*

| Number of Payments | Payment Amount ($) | Due Date |
|---|---|---|
| 345 | 97.21 | 08/25/23 |

### Account number
096 - 1

### Date
08/11/23

### Manage your account online
Navient.com

### Payment address
P.O. Box 9533
Wilkes-Barre, PA 18773-9533

### Phone number
888-272-5543

Monday – Thursday,
8 a.m. – 9 p.m.
Friday, 8 a.m. – 8 p.m. Eastern

### Variable Interest Rates on Federal Loans Increased July 1st
Although most federal loans have fixed interest rates, some have variable rates that can change on an annual basis and impact the amount you pay. These rates are set by Congress and can't be changed by your loan servicer. You can view the rates on your loans by going to the Loan Details pages after you log in at Navient.com.

---

Para comunicarse en Español con 'Atención al Cliente', llame gratis al (888) 272-5543, y marque el numero correspondiente.

**Exhibit H  01**

*9718267096125485294*

| H204 | E17482 | S | 4868 |
|---|---|---|---|



This repayment schedule replaces all previous schedules for the loans and doesn't include any Past Due Amounts. All terms of your original Promissory Notes remain in effect.

**What you need to know**
Interest accrues on your account at a rate set by the terms of your loan. If you depart from your original repayment schedule by taking a forbearance or making late payments, for example, you may accrue additional interest that will need to be paid.

Under the terms of your Promissory Note, we apply your payments to outstanding interest before applying them to principal. So, if you accrue more interest than we originally anticipated in your repayment schedule and if you don't pay that additional interest as it accrues, your Monthly Payment Amount may need to be adjusted to make sure your loan will be paid off by its stated loan term end date.

**We're here to help**
We want to help you manage your account in a way that's convenient for you. Please call us or visit us online.

**Important disclosure(s)**

*Capitalization of interest*
Unpaid Interest may be capitalized (added to your principal balance) at the end of the grace period, at the end of a deferment, at the end of each forbearance, when the loan enters repayment, and upon certain conditions while enrolled in an income-driven repayment (IDR) plan as permitted by law and your loan agreement. For Subsidized Stafford Loans first disbursed prior to July 1, 2000, Unsubsidized Stafford Loans first disbursed prior to October 7, 1998, all PLUS and Consolidation Loans, and some private loans, Unpaid Interest may also be capitalized as often as quarterly during in school, grace, deferment, or forbearance periods. Please see your loan agreement for additional details. Capitalization increases both the principal balance and total loan cost.

*Review of payment schedule*
Periodically, we review accounts and adjust Monthly Payment Amounts to ensure that loans will be paid off within their repayment terms. We will inform you of any such change before the new Monthly Payment Amount is due.

*Credit reporting accuracy*
If you believe the information we are reporting to the consumer reporting agencies is not accurate or is incomplete, or you want to dispute it, please write us. Include your name, address and account number.  Please identify the specific information in question, explain the basis of the dispute, and include all supporting documentation to substantiate the basis of the dispute. Mail your letter to: Navient, P.O. Box 9500 Wilkes-Barre, PA 18773-9500.

**Exhibit H  02**

*Your loan servicer*
Your loans are serviced by Navient Solutions, LLC (NMLS# 212430).

**Loan Information**

| DISBURSEMENT DATE | ORIGINAL PRINCIPAL | UNPAID PRINCIPAL | INTEREST RATE | LOAN PROGRAM |
|---|---|---|---|---|
| 10/10/07 | $ 25,420.72 | $ 18,449.56 | 4.625 | SM |

**Exhibit H  03**



PO BOX 9750
WILKES-BARRE, PA 18773-9750

GWENDOLYN J SIMPSON

## GWENDOLYN, your Income-Sensitive Repayment (ISR) plan has been approved on the loans listed below.

**New ISR plan payment amount:** $212.30
**Due date:** 08/25/23

This payment amount will be in effect for 12 months. You'll resume a standard repayment plan after the ISR plan ends.

*To keep your lower payment, it's important that you reapply for an ISR plan on an annual basis.* Approximately 60 days prior to the expiration of this period, we'll give you the opportunity to reapply and provide updated income documentation if you wish to continue an additional 12 months of income-sensitive payments.

**Interest rates for loans with variable rates can change every July 1st** (see important disclosure section). Any increase or decrease in the variable interest rates applicable to your loans will not affect your reduced payment amount, but instead will be reflected in the monthly payment amount established under your next repayment schedule. Your loans must be paid off within the maximum repayment period allowed by law; however, you may request a reduced-payment forbearance to allow you to pay less than the interest accruing monthly on your loans because you have a financial hardship.

**We're here to help**
If you have any questions, visit us online or give us a call.

**Account number**
096 - 1

**Date**
08/11/23

**Manage your account online**
Navient.com

**Contact us**
888-272-5543

Monday – Thursday,
8 a.m. – 9 p.m.
Friday, 8 a.m. – 8 p.m. Eastern

Remember, the more you can pay each month, the less you'll pay in interest over the life of your loan(s).

**Important disclosure(s)**

*Capitalization of interest*
Unpaid Interest may be capitalized (added to your principal balance) at the end of the grace period, at the end of a deferment, at the end of each forbearance, when the loan enters repayment, and upon certain conditions while enrolled in an income-driven repayment (IDR) plan as permitted by law and your loan agreement. For Subsidized Stafford Loans first disbursed prior to July 1, 2000, Unsubsidized Stafford Loans first disbursed prior to October 7, 1998, all PLUS and Consolidation Loans, and some private loans, Unpaid Interest may also be capitalized as often as quarterly during in school, grace, deferment, or forbearance periods. Please see your loan agreement for additional details. Capitalization increases both the principal balance and total loan cost.

*Your loan servicer*
Your loans are serviced by Navient Solutions, LLC (NMLS# 212430).

Para comunicarse en Español con 'Atención al Cliente',
llame gratis al (888) 272-5543, y marque el numero correspondiente.

**Exhibit I  01**
*9718267096125485297*



H303          E17482          S          4868

**Loan Information**

| DISBURSEMENT DATE | ORIGINAL PRINCIPAL | UNPAID PRINCIPAL | INTEREST RATE | LOAN PROGRAM |
|---|---|---|---|---|
| 10/10/07 | $ 46,788.35 | $ 21,996.83 | 4.625 | SM |
| 10/10/07 | $ 25,420.72 | $ 18,449.56 | 4.625 | SM |

**Exhibit I  02**